460 F.2d 477
 Juan PADILLA et al., Plaintiffs-Appellants,
v.
Hon. Harold J. ACKERMAN et al., Defendants-Appellees.
 No. 25146.
 United States Court of Appeals,
Ninth Circuit.
 May 5, 1972.
 
 Ralph M. Segura, Los Angeles, Cal., for plaintiffs-appellants.
 Russell Iungerich (appeared), Jack K. Weber, Deputy Attys. Gen., William E. James, Asst. Atty. Gen., Thomas C. Lynch, Cal. Atty. Gen., Los Angeles, Cal., for defendants-appellees.
 Before KOELSCH and CARTER, Circuit Judges, and BEEKS,* District Judge.
 KOELSCH, Circuit Judge.
 
 
 1
 The State of California has by statute instituted an elaborate program for the medical treatment of defendants convicted of crime and who are "addicted or by reason of repeated use of narcotics may be in imminent danger of becoming addicted to narcotics. . . ." California Welfare and Inst. Code Sec. 3051. Immediately upon the conviction of a defendant who appears to have a narcotics problem, the trial court is required to "adjourn the proceedings or suspend imposition or execution of the sentence and order the district attorney to file a petition for commitment of the defendant to the Director of Corrections for confinement in the narcotic detention, treatment and rehabilitation facility. . . ." Cal.Welfare and Inst.Code Sec. 3051. A hearing is then held and defendant is ordered committed, if found to be within the purview of the statute. However, should the defendant, during his commitment, prove to be an unfit subject for treatment due to "excessive criminality or for other relevant reason" he may be returned to the trial court by the Director "for such further proceedings on the criminal charges as that court may deem warranted." Cal.Welfare and Inst.Code Sec. 3053. However, the court does not mechanically rescind the commitment and resume the criminal proceeding, but does so only upon a determination following a hearing that relevant reasons support the defendant's rejection from further treatment. People v. Hannagan, 248 Cal.App.2d 107, 56 Cal.Rptr. 429, 434-435 (1967); People v. Pate, 234 Cal.App.2d 273, 44 Cal.Rptr. 462 (1965); People v. Montgomery, 255 Cal.App.2d 127, 62 Cal.Rptr. 895 (1967), cert. den. 390 U.S. 1034, 88 S.Ct. 1430, 20 L.Ed.2d 292.
 
 
 2
 Appellants are all former patients in either of two California narcotics treatment institutions. Shortly after inmate riots at these institutions, the Director returned them and a number of other patients to the courts, pursuant to Cal. Welfare and Inst.Code Sec. 3053, for "further proceedings on the criminal charges" allegedly because of their participation in the disturbances. Thereupon, and prior to the transfer hearings in the state courts, the appellants, individually and as representatives of a class, invoking the 14th Amendment to the Constitution and the Civil Rights Acts, particularly 42 U.S.C. Sec. 1983, commenced this suit for a declaratory judgment and injunctive relief in the United States District Court. They alleged in substance that they were being excluded from treatment "solely and exclusively" because of their membership in the Mexican-American Youth Organization (M. A.Y.O.), a civil rights group, and not because of any participation in the disturbances.
 
 
 3
 The district court, without holding a hearing, dismissed the action on the ground that "whether the complaint is construed as a habeas corpus petition or a civil rights suit, plaintiffs should first utilize the state procedures available to them before seeking federal relief." The lower court, in this decision, implicitly accepted two theories advanced by the state below and again on this appeal -that an action of this type should be construed as one for habeas corpus and second, that even if treated as a civil rights action under 42 U.S.C. Sec. 1983, it should not be entertained by a federal court until the plaintiffs had first exhausted their state remedies. In so concluding, we are clear that the court erred.
 
 
 4
 1. The court's habeas corpus theory.
 
 
 5
 A purported civil rights complaint which "in essence" seeks habeas corpus relief, should of course be treated as an application for habeas corpus. Bennett v. Allen, 396 F.2d 788 (9th Cir. 1969), a case relied upon by the state, provides a fair example. There, Bennett, a state prisoner, filed a complaint under Sec. 1983 in which he alleged, because of entrapment and a coerced plea of guilty, state official should be enjoined from imprisoning him. This court concluded that his suit constituted an attempt to collaterally attack the judgment of conviction under which he was detained and should, therefore, be treated as an application for the writ; that because Bennett had failed to exhaust his state remedies, as required by 28 U.S.C. Sec. 2254, the federal court was correct in not entertaining his application. However, Bennett is not apposite to this case; here the appellants are not seeking release from custody, but rather are simply challenging some incidents of that custody. In many recent decisions habeas corpus has been broadly construed to permit relief short of outright release. See e. g. Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). But this modern day expansion of habeas corpus does not, in our view, restrict a prisoner's right to initially resort to a federal forum to remedy deprivations of his constitutional rights by prison officials. Wilwording v. Swenson, 404 U.S. 249, 251, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971). Bennett, supra, is not to the contrary and at least two courts, which have thoughtfully considered the question, have held that a Sec. 1983 action is proper unless the prisoner seeks collateral review of his conviction or outright release from custody. Sostre v. McGinnis, 442 F.2d 178, 182 (2d Cir. 1971, in banc) cert. den. sub nom.; Oswald v. Sostre, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972); Landman v. Royster, 333 F.Supp. 621, 650-651 (E.D.Va.1971). The reasoning of the two cited cases is entirely consistent with Bennett and Peinado v. Adult Authority, 405 F.2d 1185 (9th Cir. 1969), cert. denied, 395 U.S. 968, 89 S.Ct. 2116, 23 L.Ed.2d 755, and is, we think the proper limitation on prisoner Sec. 1983 actions.
 
 
 6
 2. The court's theory that appellants were required to first "utilize the state procedures" before seeking federal relief.
 
 
 7
 We construe this statement to mean that the doctrine of exhaustion applies to actions within the purview of Sec. 1983. Both the Supreme Court and this court have held otherwise. Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L. Ed.2d 647 (1967); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Bright v. Bishop, 398 F.2d 804 (9th Cir. 1968).
 
 
 8
 We affirm the dismissal of this action, however, on a different ground.[1] Subsequent to the entry of judgment in the case, the Supreme Court decided Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its companion cases.[2] In those decisions the Court expressed a strong "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." Younger v. Harris, supra, 401 U.S. at 41, 91 S.Ct. at 749. The Court emphasized that the only exceptions to this rule will be those cases in which the injury to federal constitutional rights threatened by allowing the state proceedings to continue is "both great and immediate." 401 U.S. at 46, 91 S.Ct. 746, 27 L.Ed.2d 669. See, e. g., Dombrowski v. Pfister, 380 U.S. 479, 85 S. Ct. 1116, 14 L.Ed.2d 22 (1965).
 
 
 9
 It is our opinion that the principle affirmed in Younger v. Harris controls this case. At the time this suit was commenced, each of the named plaintiffs had been moved from state narcotics institutions to temporary holding facilities. Each had been "returned" to the criminal courts, within the terms of Cal.Welfare and Inst.Code Sec. 3053, where criminal proceedings, which had been adjourned or suspended upon their commitment, were resumed. See People v. Hannagan, 248 Cal.App.2d 107, 56 Cal.Rptr. 429 (1967); People v. Moreno, 235 Cal.App.2d 386, 45 Cal. Rptr. 243 (1965). Although the pending proceedings in the state courts were not criminal prosecutions in the usual sense-appellants had been found guilty prior to their commitment, but proceedings had been suspended prior to sentencing-we think that, under the somewhat unique California statutory scheme here involved, they were nevertheless an integral part of the criminal prosecution, and were "pending criminal proceedings" within the rule of Younger v. Harris, supra. As such, a federal court would be barred from enjoining them except upon a showing of "special circumstances." And appellants alleged no such circumstances. As already noted, the California courts afford a prompt and adequate hearing to a patient whom the Director seeks to reject for further treatment; and, as the decisions of those courts show, unless the exclusion is for a reason relevant to the person's fitness for treatment, he is returned to the treatment facility.
 
 
 10
 Appellants argue only that federal court intervention into the pending state proceedings would be the "most effective procedure" for the assertion of their federal claims. They do not allege that the state proceedings would be an inadequate or inhospitable forum in which to raise their federal claims. Therefore, in the circumstances of this case, it would have been improper for the district court to consider the case on the merits, as appellants did not present adequate justification for interference with a pending state court proceeding.[3]
 
 
 11
 The judgment is affirmed.
 
 
 
 *
 Honorable William T. Beeks, United States District Judge, Seattle, Washington, sitting by designation
 
 
 [1]
 The state has suggested that this appeal should be dismissed as moot, because the events sought to be enjoined have occurred. We disagree. As pointed out above, the district court's stated reasons for dismissing the action were erroneous. Had we not concluded that the pending state hearings were criminal proceedings, and therefore not enjoinable under Younger v. Harris, we would remand the case to the district court for trial on the merits. If this were the case, the claim for injunctive or declaratory relief would not be moot, because the fact that the state had transferred the appellants, pending our review of the district court's action, would not prevent the district court from restoring the status quo by issuing mandatory injunctive relief. See Porter v. Lee, 328 U.S. 246, 251, 66 S.Ct. 1096, 90 L.Ed. 1199 (1946); Mills v. Green, 159 U.S. 651, 654, 16 S.Ct. 132, 40 L.Ed. 293 (1895)
 
 
 [2]
 Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Perez v. Ledesma, 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971)
 
 
 [3]
 Appellants also argue that, even if injunctive relief is barred here, the suit should not have been dismissed, because declaratory relief was also sought. We disagree. In Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the Court held that "[I]n cases where the criminal proceeding was begun prior to the federal civil suit, the propriety of declaratory and injunctive relief should be judged by essentially the same standards. In both situations deeply rooted and long-settled principles of equity have narrowly restricted the scope of federal intervention, and ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid." 401 U.S. at 72, 91 S.Ct. at 767