Thomas **WORKMAN** et al., Plaintiffs-Appellants,

v.

John **MITCHELL**, in his official capacity as the Attorney General of the United States, et al., Defendants-Appellees.

No. 73–3585.

United States Court of Appeals, Ninth Circuit.

Aug. 21. 1974.

---

David Allen (argued), of Legal Services Center, Seattle, Wash., for plaintiffs-appellants.

Marc P. Richman (argued), of U. S. Dept. of Justice, Appellate Section, Crim.Div., Washington, D. C., for defendants-appellees.

Before HAMLEY, ELY and TRASK, Circuit Judges.

HAMLEY, Circuit Judge:

Thomas Workman, Armando Vargas, Jerry Desmond and Lanier Ramer, while incarcerated at the Federal Penitentiary, McNeil Island, Washington, became involved in a work stoppage which led to disciplinary proceedings against them. As an outgrowth of those proceedings, these four federal prisoners brought this action for declaratory, injunctive and mandamus relief against the Attorney General of the United States, the Director of the Federal Bureau of Prisons, and the Warden of McNeil Island Penitentiary.

Plaintiffs brought the action on behalf of themselves and a class consisting of all federal prisoners incarcerated at the penitentiary. They assert four general claims for relief: (1) in numerous respects the procedures followed by prison officials in punishing plaintiffs by ordering forfeiture of good time credits failed to accord plaintiffs due process of law; (2) the manner of punishing plaintiffs for asserted misconduct, whereby they were placed in filthy, crowded and otherwise objectionable isolation cells for substantial periods of time, constituted cruel and unusual punishment in violation of the Eighth Amendment; (3) in determining plaintiffs' guilt and punishment on charges of misconduct, the defendants failed to follow their own regulations; and (4) in determining plaintiffs' punishment on various misconduct charges, defendants failed to abide by the Administrative Procedures Act, 5 U.S.C. § 500 et seq.

The district court denied plaintiffs' motion for a class action, apparently on the ground that "the relief with respect

to the four named plaintiffs will inure to the benefit of present and future persons incarcerated ' at McNeil Island. . . ."

After a non-jury trial, the district court entered its findings of fact, conclusions of law and judgment. As thereafter amended, the court first found generally that during the period commencing on or about February 22, 1971, and ending on or about March 7, 1971, inmates of the McNeil Island Penitentiary went on strike and refused to report to work. The court found that about eight hundred of the eleven hundred inmates of the penitentiary were involved in the strike. The court further found that the prison officials were justified in believing, and in acting on the belief, that a potentially dangerous and explosive situation existed endangering the lives of the participants, non-participants, and prison staff at all levels, and that prison property, as well as that of inmates, was in jeopardy of injury or destruction.

The district court then entered findings stating, with respect to each of the four individual plaintiffs, the nature of the charges made, the disciplinary proceedings had, and the punishments imposed. The court found that the conditions in the segregation cells during the time of the strike and shortly thereafter were inadequate, being characterized as filthy and crowded, with little opportunity for exercise and personal hygiene. The court further found, however, that these conditions were due in considerable part to the misconduct of the inmates using the segregation units. The court also found that (1) during the strike the drastic actions on the part of the prison officials, i. e., summary "mandation" of prisoners to segregation, was reasonable due to the extremity of the circumstances, and (2) the crowded conditions of the segregation units dur-

ing the periods in close proximity to the strike did not reflect the normal policy of the prison officials under ordinary circumstances nor the normal condition of habitation.

On the basis of these amended findings, the district court concluded that the confinement in segregation, despite the periods of deplorable conditions, did not constitute cruel and inhuman punishment. The court further concluded:

"3. That the proceedings in which each of the plaintiffs lost their good time did not meet minimum standards of due process as required by the principles laid down in Morrissey v. Brewer, 408 U.S. 471 [92 S.Ct. 2593, 33 L.Ed.2d 484] (1972) and Gagnon v. Scarpelli, 411 U.S. 778 [93 S.Ct. 1756, 36 L.Ed.2d 656] (1973); said proceedings violated the defendants' own rules and regulations then in force, and, therefore, defendants, their agents and employees, acted arbitrarily and capriciously and said proceedings are void as to each plaintiff." [1]

Insofar as here relevant, the amended judgment:

(1) Declared that the proceedings before the prison Adjustment Committee and Good Time Forfeiture Boards in which plaintiffs lost good time or were remanded to segregation did not meet the minimum requirements of due process and violated defendants' own regulations then in force, and therefore defendants, their agents and employees acted arbitrarily and capriciously;

(2) Ordered defendants to forthwith restore the plaintiffs' good time lost as a result of proceedings by defendants, and expunge the charges and proceedings from plaintiffs' inmate records, and

(3) Ordered defendants to credit plaintiffs with earned good time from the time of the initial forfeiture until restoration pursuant to this order, unless good time loss has been imposed be-

1. The district court did not state in what respects defendants violated their own rules and regulations. However, since defendants appear to concede on appeal that such viola-

tions did occur, and do not challenge findings, conclusions and judgment in this regard, we are not called upon to explore the nature of these violations.

cause of conduct arising subsequent to the initial forfeiture and independent of these proceedings.

Plaintiffs appeal, seeking the following additional items of relief:

(1) A judicial declaration to the effect that the procedural and substantive rights announced in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed. 2d 484 (1972) (revocation of parole), and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (revocation of probation) attach to federal prison disciplinary hearings;

(2) A judicial declaration that the punishment imposed on plaintiffs "was so disproportionately severe to the nature of the alleged offense that it violated the Due Process Clause of the Fifth Amendment," because it constituted "arbitrary and capricious punishment;"[2] and

(3) Relief for the class plaintiffs seek to represent similar to that accorded the named plaintiffs.

Plaintiffs claim district court jurisdiction under 28 U.S.C. §§ 1331 (federal question), 1361 (mandamus), and 2201–2202 (declaratory judgment), and under 5 U.S.C. §§ 500 et seq. (Administrative Procedure Act).

■ The district court unquestionably had jurisdiction, under the mandamus statute, 28 U.S.C. § 1361, to require defendants, all of whom were officers or employees of the United States, or an agency thereof, to perform the ministerial duty of complying with their own regulations. United States v. Walker, 409 F.2d 477, 481 (9th Cir. 1969). In

fulfillment of this requirement it was proper to order defendants to undo the harm they had done by failing to comply with their regulations. This action by the district court is not challenged on appeal.[3]

■■ Aside from this mandamus relief, obtained by the named plaintiffs, and sought by them for the class they seek to represent, all of the additional relief they seek is declaratory in nature. The Federal Declaratory Judgment Act[4] does not establish a new basis for jurisdiction in the federal courts; it merely establishes a new remedy, available in cases in which jurisdiction otherwise exists. The question, therefore, is whether the mandamus statute provides a jurisdictional basis for the declaratory relief plaintiffs seek.

Defendants assert that the district court did not have jurisdiction under the mandamus statute to require defendants to comply with due process requirements in the administration of prison disciplinary proceedings, and that, therefore, the district court also lacked jurisdiction to provide the declaratory relief requested.

Defendants rely primarily upon Jarrett v. Resor, 426 F.2d 213, 216 (9th Cir. 1970), where this court stated that section 1361 "did not enlarge the generally recognized scope of mandamus relief," and that mandamus will not lie "unless it appears that the claim is clear and certain and the duty of the officer is ministerial and so plainly prescribed as to be free from doubt." Defendants argue, therefore, that mandamus is not

2. In their amended complaint, plaintiffs predicated this grievance not upon the Due Process Clause of the Fifth Amendment, but upon the Eighth Amendment stricture against cruel and unusual punishment.

3. Defendants do not expressly concede that section 1361 provides the jurisdiction for this district court action. They state that their discretion not to contest this district court action was influenced by the fact that, in any event, plaintiffs could have obtained this relief under the habeas corpus statute, 28 U.S.C. § 2241.

4. 28 U.S.C. § 2201 reads:
"In a case of actual controversy within its jurisdiction, except with respect to Federal taxes, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

available to compel federal officers to comply with due process requirements in the administration of prison disciplinary proceedings because the requirements of due process in that context are neither "plainly prescribed" nor "free from doubt."

The defendants' reliance upon Jarrett v. Resor, *supra*, is misplaced. There we held that the complaint failed to invoke jurisdiction under section 1361 because it alleged "at most that in fulfilling their duty of acting upon his request for a discharge from the Army, [the defendants] either abused their discretion, incorrectly found the facts, or misapplied the law." *Id*. at 216–217. Thus, mandamus jurisdiction was improperly invoked in that case because there was no allegation that defendants had failed to perform any ministerial duty, be it established by regulation, statute or constitutional provision. Here, however, the complaint clearly alleges that the disciplinary regulations adopted by the defendants, governing the procedures to be followed in imposing prison discipline, fail to comply with the requirements of due process. The district court does have jurisdiction under the mandamus statute to compel such compliance.

Defendants suggest, however, that if the complaint alleges a failure to perform duties required by the Constitution, mandamus jurisdiction is available only if the precise elements of those duties have previously been prescribed. Decisions of this circuit, and of other circuits, suggest otherwise. *See*, Mead v. Parker, 464 F.2d 1108 (9th Cir. 1972); Martinez v. Richardson, 472 F. 2d 1121, 1123–1124 (10th Cir. 1973); Walker v. Blackwell, 360 F.2d 66 (5th Cir. 1966).[5]

We conclude that the district court did have jurisdiction under section 1361 to order compliance with due process requirements in the administration of prison disciplinary proceedings, and it follows that the court also had jurisdiction to declare the due process requirements applicable to such proceedings.[6]

█ But defendants call attention to the requirement of section 2201 that there be "a case of actual controversy" within the court's jurisdiction. Defendants correctly equate this statutory requirement with the case or controversy requirement of Art. III, Sec. 2 of the Constitution. As the Supreme Court has recently said, the complaint must

"satisfy the threshold requirement imposed by Art. III of the Constitution that those who seek to invoke the power of federal courts must allege an actual case or controversy." O'Shea v. Littleton, 414 U.S. 488, 493, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).

There is no doubt that a case or controversy, in the constitutional sense, existed when the complaint in this action was filed and up to the time defendants decided not to appeal: up to then plaintiffs, for themselves and for the class they sought to represent, were seeking to set aside disciplinary sanctions which had been invoked against them, and to obtain a judicial declaration that prison disciplinary procedures were in violation of defendants' own regulations and of the Due Process Clause of the Fifth Amendment and the cruel and unusual punishment provision of the Eighth Amendment.

█ But defendants correctly point out that the case or controversy must continue to exist at the time the appellate court is asked to act. *See* Steffel v.

5. Even if there were merit to the defendants' jurisdictional argument at the time of the district court proceedings, the subsequent decision of the Supreme Court in Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), discussed later in this opinion, resolves any doubts as to the due process requirements applicable to prison disciplinary proceedings.

6. The one express exception stated in section 1361—Federal tax questions—is not involved in our case. The declaratory judgment statute is, with this exception, all inclusive and jurisdiction thereunder "is to be liberally exercised in achieving the Act's remedial objectives." 6A Moore's Federal Practice § 57.21 [4], at 57–232 (2d ed. 1974).

Thompson, 415 U.S. 452, 459, n. 10, 94 S. Ct. 1209, 39 L.Ed.2d 505 (1974); Roe v. Wade, 410 U.S. 113, 125, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).

■ A case or controversy exists at the time of appellate review if the appellants have shown that, as of that time, "some threatened or actual injury resulting from the putatively illegal action" continues to exist. *See* Linda R. S. v. Richard D., 410 U.S. 614, 617, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973). Defendants urge that plaintiffs have showed no threatened or actual injury as of the present time because: (1) all effects of the 1971 disciplinary proceedings have been erased by the district court; and (2) three of the four plaintiffs have been paroled and the remaining plaintiff, Ramer, has been transferred to another federal prison.

Whatever merit these contentions might have with reference to the named plaintiffs, they have no bearing on the grievances of the class plaintiffs sought to represent, namely, all federal prisoners incarcerated at McNeil Island Penitentiary. No members of this class have had, as a result of this litigation, the erasure of all effects of past disciplinary proceedings which may have been had in violation of defendants' own regulations. All members of this class are potentially subject to actual injury as a result of future disciplinary procedures which may fail to conform to constitutional guarantees, or which may result in punishment which does not comport with the Eighth Amendment or the Due Process Clause of the Fifth Amendment.

It thus becomes necessary for us, at this point, to determine whether the district court erred in denying plaintiffs' motion for a class action. If it did err in this regard, then a case or controversy continues to exist whether or not the named plaintiffs have a present grievance.

■ As noted above, the district court apparently denied a class action on the ground that "the relief with respect to the four named plaintiffs will inure to the benefit of present and future persons incarcerated at McNeil Island. . . ."

This might or might not have been an adequate reason for denying a class action, had the district court thereafter entered a declaratory judgment which would redound to the benefit of the class. *See* Mead v. Parker, 464 F.2d 1108, 1112 (9th Cir. 1972). But as events turned out, no such declaratory relief was granted and nothing in the amended judgment which was entered overcomes the grievances asserted on behalf of the class.

■ However, defendants suggest another reason why it would now be inappropriate to establish such a class action. This reason is that three of the named plaintiffs are now on parole and the fourth has been transferred to a federal prison at Terre Haute, Indiana. Defendants urge that none of the named plaintiffs are presently members of the class they wish to represent, and that a named plaintiff cannot represent a class of which he is not a member.[7]

Defendants cite two decisions in support of this proposition. In one of them, Bailey v. Patterson, 369 U.S. 31, 32–33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), it was shown that the named plaintiff had never been a member of the class. In the other decision, Norman v. Connecticut State Board of Parole, 458 F.2d 497 (2d Cir. 1972), the plaintiff brought his class action challenging state parole revocation proceedings while he was on parole. But during the pendency of his appeal, the criminal charges against him were *nolled* by a state court. Since there were thus no outstanding criminal charges against the sole named plaintiff, and no parole revocation hearing was

---

7. We observe that this contention is to be distinguished from the argument that the release of a prisoner on parole pending determination of his action to have prison regulations invalidated moots the action. This latter argument has been rejected. *See* Morales v. Schmidt, 494 F.2d 85, 86-87 (7th Cir. 1974).

pending against him, the named plaintiff was held to be no longer a member of the class he sought to represent. The court accordingly remanded the case to the district court with directions to dismiss the action without prejudice on grounds of inadequacy of representation, unless within thirty days another member of the class was granted leave to intervene.

In a civil rights action attacking the constitutionality of state statutes relating to detention of minors taken into custody by state officials, this court held that any basis for mooting the case as to the named plaintiff, would not preclude the continuing jurisdiction of the district court as to others of the plaintiff's original class, nor bar her litigating the issue in their behalf. Rivera v. Freeman, 469 F.2d 1159, 1163 (9th Cir. 1972).

We think it is particularly appropriate to apply this holding in the case before us, where the asserted removal of one of the named plaintiffs from the class was accomplished by the act of one of the defendants, the Warden of McNeil Island Penitentiary, in transferring the plaintiff, Ramer, from McNeil Island Penitentiary to the federal penitentiary at Terre Haute, Indiana.[8] However meritorious the motive may have been for this transfer, it would be intolerable to permit a defendant, in this manner, to destroy the representative capacity of a named plaintiff. We accordingly hold that, under the circumstances, plaintiffs have standing to represent a class consisting of all present prisoners at McNeil Island Penitentiary.

We have not overlooked the fact that Rule 23, F.R.Civ.P., pertaining to class actions, sets out a number of prerequisites to a class action. However, defendants did not, in the district court, and do not on appeal, contend that any of these prerequisites are absent, other than as discussed above.

We therefore hold that, pursuant to Rule 23, F.R.Civ.P., plaintiffs should be permitted to represent a class consisting of all present prisoners incarcerated at McNeil Island Penitentiary. The district court should have no difficulty prescribing reasonable notice requirements with regard to members of the class. While we have held that plaintiffs have standing to represent the class, we think the district court, on remand, should provide a reasonable opportunity for one or more present McNeil Island prisoners to intervene for the purpose of also representing the class. This would comport with the procedure adopted in Norman v. Connecticut State Board of Parole, 458 F.2d 497 (2d Cir. 1972).

Since we have determined that this case should proceed, on remand, as a class action, it follows that a case or controversy continues to exist, and the district court has continuing authority under 28 U.S.C. § 2201 to grant declaratory relief. The establishment of a class action also enables the district court to consider whether members of the class are entitled to relief, under 28 U.S.C. § 1361, because of possible past violations of defendants' own rules and regulations in meting out discipline in connection with the 1971 strike at the prison.[9]

---

8. The Warden secured an order authorizing him to transfer Ramer and two of the other named plaintiffs to other penal institutions "in the interest of the security and safety of the inmate population" at McNeil Island. It was made a condition of this order that defendants shall produce the transferred plaintiffs before the district court when and if ordered to do so for testimony or for such other purposes as the court may direct. An order was thereafter entered transferring these plaintiffs to McNeil Island Penitentiary, near Tacoma, Washington, where the trial was to be held. After the trial, these plaintiffs were re-transferred to other institutions.

Since the transfer of Ramer to another institution was thus not allowed to interfere with his ability to prosecute his personal grievances at the trial, it is difficult to see why such transfer should impair the ability of plaintiff Ramer to represent the class in further proceedings.

9. Since we have determined that the district court had jurisdiction and authority, under

Turning to the merits, plaintiffs first argue that the disciplinary regulations and practices at McNeil Island Penitentiary violate plaintiffs' rights to procedural due process as guaranteed by the Fifth Amendment. In particular, plaintiffs complain of the procedures used in the forfeiture of earned statutory good time and in confining plaintiffs in punitive segregation. Plaintiffs point out that the forfeiture of good time credits rendered all of them ineligible for parole for two and a half years, after which period the district court ordered restoration of forfeited good time and the expungement of their prison records.

After the disciplinary proceedings here in question, the Bureau of Prisons issued Policy Statement No. 7400.6A (August 13, 1971), which now governs proceedings before the prison forfeiture boards, and Policy Statement No. 7400.-5B (June 6, 1972), which now governs proceedings before the prison adjustment committees. However, plaintiffs contend that these new rules and regulations are much like the previous rules and regulations, and are subject to the same constitutional attack.

In essence, plaintiffs contend that the former and present rules and regulations fail in numerous respects to meet the constitutional tests announced in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) (revocation of parole), and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) (revocation of probation).

In its order amending the original findings of fact, conclusions and judgment, the district court first stated that the original findings, conclusions and judgment, insofar as they declared that defendants' *new* rules and regulations substantially complied with "minimal" due process requirements, were "gratuitous and irrelevant," and were "incorrectly incorporated and went beyond the issues." But the amended conclusions of law state that the proceedings in which each of the plaintiffs lost their good time "did not meet minimum standards of due process as required by the principles laid down in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973).

This holding by the district court pertains to proceedings held under, but in non-compliance with, rules and regulations which are no longer in effect, and accordingly this pronouncement would seem to have no effect which we need to notice. However, the quoted language in the district court's amendatory order, standing alone, could possibly be taken as an implied judicial declaration that all federal prison disciplinary rules and regulations must comport with the principles announced in *Morrissey* and *Gagnon*.

It is apparent that defendants did not construe this language as amounting to such an implied judicial declaration, since they are not appealing. And when we examine this language in the context of the entire amendatory order, we con-

28 U.S.C. §§ 1361 and 2201–2202, to deal with all grievances asserted by plaintiffs, we need not consider whether the district court also had jurisdiction under the other statutes relied upon by plaintiffs, namely 28 U.S.C. § 1331 or 5 U.S.C. §§ 500 et seq.

It is worth noting, however, that one source of district court jurisdiction which plaintiffs did not invoke might have provided all of the basic jurisdiction that was needed. We refer to the habeas corpus statute, 28 U.S.C. § 2241. It appears to be fairly well established that, where there is no exhaustion of state remedies problem, federal habeas corpus actions are now available to deal

with questions concerning both the duration and the conditions of confinement. *See* Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971) ; Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969) ; Mead v. Parker, 464 F.2d 1108 (9th Cir. 1972). *See also* Preiser v. Rodriguez, 411 U.S. 475, 499, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). The fact that plaintiffs did not allege jurisdiction under section 2241 is of no consequence, inasmuch as they named the Warden a defendant. *See* Padilla v. Ackerman, 460 F.2d 477, 478 (9th Cir. 1972) ; Bennett v. Allen, 396 F.2d 788 (9th Cir. 1968). *See also* note 3, *above.*

clude that the district court did not intend such a declaration. In its order, that court stated that the "real and intended thrust" of the court's judgment "was that the defendants did not comply with their own rules and regulations then in force with respect to Adjustment Committee and Good Time Forfeiture Board hearings. . . ." The court added: "It was felt unnecessary to reach alleged constitutional issues."

We therefore decline to accept the district court's quoted language as a judicial declaration that all federal prison disciplinary rules and regulations must comport with *Morrissey* and *Gagnon*. In any event, Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), decided by the Supreme Court during the pendency of this appeal, renders any such judicial declaration inappropriate.[10]

*Wolff* was a civil rights class action brought by and on behalf of inmates of a Nebraska state prison. The court of appeals (483 F.2d 1059 (1973)) had held that the procedural requirements outlined in *Morrissey* and *Gagnon* should be generally followed in prison disciplinary hearings. The Supreme Court, however, held in *Wolff*, that the *Morrissey-Gagnon* procedures need not in all respects be followed in disciplinary cases in state prisons. Instead, the Supreme Court prescribed the following much more limited constitutional requirements for state prison disciplinary proceedings:

(1) Written notice of the claimed violations should be given to the inmate at least twenty-four hours in advance of a disciplinary hearing.

(2) The inmate should receive a written statement by the fact-finders as to the evidence relied on and reasons for the disciplinary action.

(3) The inmate should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals.

(4) Where an illiterate inmate is involved, or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden, to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff.

The Supreme Court did not, of course, preclude prison officials from providing additional procedural safeguards, but this was left to their sound discretion. While *Wolff* involved state prison inmates, it can hardly be argued that federal prison inmates are constitutionally entitled to greater procedural safeguards than are constitutionally required for state prisoners.

But, in oral argument before this court, plaintiffs argued that the holding, in *Wolff* that the *Morrissey-Gagnon* guidelines are not fully applicable, should be disregarded here because the discipline exerted against plaintiffs actually rendered them ineligible for parole. Because of this assertedly more grievous effect of the discipline meted out in this case, plaintiffs argue, the result was more analogous to parole or probation revocation, than to normal prison discipline, and hence the *Morrissey-Gagnon* guidelines should apply.

We question the factual premise of this argument. The Nebraska statute involved in *Wolff*, quoted in note 6 of that opinion, provides that the total of all good behavior reductions shall be deducted from the inmate's minimum

---

10. *Wolff* was decided subsequent to the decision of this court in Clutchette v. Procunier, 497 F.2d 809, decided on April 25, 1974, which decision involves some of the same issues, arising in a civil rights class action involving state prisoners. In the light of *Wolff*, *Clutchette* is now under further consideration by this court on a petition for rehearing.

term, to determine the date of his eligibility for release on parole. The Nebraska statute also provides that determinations of loss of good time are directly relevant to receiving parole, and all reductions are to be reported to and considered by parole authorities.

In any event, we find nothing in the Supreme Court's opinion in *Wolff* which directly, or by implication, limits the holding in that decision to cases in which prison discipline does not affect eligibility for parole.

We therefore conclude that in the remanded district court proceedings which must be had, the district court should determine and judicially declare whether defendants' disciplinary rules and regulations currently in effect meet the four constitutional requirements announced in *Wolff*, as outlined above. To the extent, if any, that the current prison rules are found not to conform to the above-specified requirements of *Wolff*, that decision makes it clear that the consequences of such a determination are to be applied to prison disciplinary proceedings held after *Wolff* was decided on June 26, 1974.

Plaintiffs argue, finally, that the district court erred in failing to judicially declare the punishment imposed on plaintiffs and their class "was so disproportionately severe to the nature of the alleged offense that it violated the Due Process Clause of the Fifth Amendment." In this connection, plaintiffs call attention to their segregation, forfeiture of good time, and loss of parole eligibility for two and a half years, and the loss of other privileges imposed upon them.

None of the plaintiffs is still suffering from any of these disciplinary actions. We can perceive no useful purpose to be served by a judicial declaration pertaining to conditions which no longer exist, and which may never occur again. The prison strike which gave rise to this discipline created an emergency situation which had to be dealt with on an emergency basis. It would be futile for a court to attempt to lay down rules governing the extent to which discipline may constitutionally be imposed to meet future hypothetical emergencies, When and if such an eventuality occurs, prison inmates have, by means of habeas corpus and attendant pendent relief, a means of obtaining judicial redress appropriate to the then-existing facts.

We conclude that the district court did not abuse its discretion in declining to render a judicial declaration pertaining to the severity of the discipline, measured by the Fifth and Eighth Amendments.

Reversed in part, affirmed in part, and remanded to the district court for further proceedings consistent with this opinion.