Darnell GARCIA, Plaintiff-Appellant,

v.

John C. LAWN, D.E.A. Administrator, Defendant-Appellee.

No. 85–6221.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 6, 1986.

Decided Dec. 15, 1986.

Mark Borenstein, Tuttle & Taylor, Inc., Los Angeles, Cal., for plaintiff-appellant.

Joseph Butler, Asst. U.S. Atty., Los Angeles, Cal., for defendant-appellee.

Before WALLACE and SCHROEDER, Circuit Judges, and B. THOMPSON,* District Judge.

SCHROEDER, Circuit Judge.

The district court denied the appellant's claim for injunctive relief from allegedly unlawful retaliation by the United States Drug Enforcement Administration (DEA) against the appellant for exercising his Title VII rights. He appeals. We must consider first an issue of mootness and then consider what may constitute irreparable harm in a Title VII injunction case against the United States.

In 1983 the appellant, Darnell Garcia, won a favorable Title VII decision from the Attorney General on his claims of discrimination by the DEA on the basis of national origin. The relief awarded included back pay, removal of adverse material from his records, and attorney's fees.

In 1985 appellant filed this action in district court to require the government to comply with the Attorney General's decision. Within two months after filing this suit, the DEA ordered him transferred from Los Angeles to Detroit. After negotiation efforts failed, he amended his complaint to request injunctive relief to forestall his transfer pending administrative review of the merits of his retaliation claim. He argued that the transfer, which would deprive him of his post of preference, was retaliation for his earlier successful pursuit of his Title VII rights. Such retaliation is unlawful under 42 U.S.C. § 2000e–3(a).

The district court denied the preliminary injunction. It said, however, that the appellant had made a strong case of retaliation, and that the appellant had demonstrated a likelihood of success on the merits. The district court pointed out that the DEA had requested authority for the transfer immediately after the petitioner filed this suit so that the "rationale behind this transfer is suspect." The district court also pointed out that DEA appeared to have greater need for Garcia in Los Angeles than in Detroit, and that the transfer was contrary to the DEA's " 'post of preference' policy by which the DEA has promised to make every effort to assign its agents to posts selected by the agents. Detroit was not selected by Garcia as a preferred post."

Under the customary test for injunctive relief, which requires the plaintiff to demonstrate "either (1) a likelihood of success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and the balance of hardships tipping in its favor,"

---

* Honorable Bruce R. Thompson, United States District Judge for the District of Nevada, sitting by designation.

*Apple Computer, Inc. v. Formula International, Inc.*, 725 F.2d 521, 523 (9th Cir. 1984), the district court would have granted the relief sought. It did not do so, however, because the defendant was the government rather than a private employer. It held that the Supreme Court's decision in *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), required an extraordinary showing of irreparable harm for an injunction to issue and that Garcia had failed to make such a showing.

In reviewing the hardship which would result from the government's action, the district court focused on the effects upon Garcia and his family. It did not discuss the adverse effects retaliatory conduct would have on the exercise of Title VII rights by other government employees, a factor which courts and commentators have deemed important in considering the appropriateness of injunctive relief under Title VII. *See e.g., Holt v. Continental Group, Inc.*, 708 F.2d 87, 91 (2d Cir.1983), *cert. denied*, 465 U.S. 1030, 1038, 104 S.Ct. 1294, 1316, 79 L.Ed.2d 695, 712 (1984); *Hyland v. Kenner Products Co.*, 10 FEP 367, 378 (S.D.Ohio 1974); B. Schlei & P. Grossman, *Employment Discrimination Law* 1063 (2d ed. 1983).

In this appeal the appellant argues that the standards of *Sampson v. Murray* should not apply to Title VII cases and that, even if they do, the burden of irreparable harm has been met. The government raises a question of mootness which we must first consider.

## MOOTNESS

During the pendency of petitioner's injunction action, the deadline for his transfer to Detroit passed. His applications for stays from the district court and this court were denied, and consequently the DEA fired him for his refusal to report to his new post. The firing took place while this appeal was pending, and the government has moved to dismiss the appeal on the theory that the appeal is moot because the appellant is no longer employed by the DEA.

■ The test for mootness of an appeal is whether the appellate court can give the appellant any effective relief in the event that it decides the matter on the merits in his favor. If it can grant such relief, the matter is not moot. The test goes back at least to 1895, when the Supreme Court stated:

> [W]hen, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal.

*Mills v. Green*, 159 U.S. 651, 653, 16 S.Ct. 132, 133, 40 L.Ed. 293 (1895). As we reaffirmed very recently, a case is moot when events " 'prevent the appellate court from granting any effective relief even if the dispute is decided in favor of the appellant.' " *Holloway v. United States*, 789 F.2d 1372, 1373 (9th Cir.1986), *quoting Matter of Combined Metals Reduction Co.*, 557 F.2d 179, 187 (9th Cir.1977). In the words of an authoritative modern treatise on this subject, a case is not moot if the court has the "ability to undo the effects of conduct that was not prevented by the time of the decision." 13A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3533.3, at 278–79 (1984).

The question thus becomes whether we can now give appellant effective relief which would "undo" the effects of the alleged retaliatory action, i.e., conditioning appellant's employment upon a move to Detroit. What has happened since the district court's order is that the defendant has completed the acts which it threatened at the time the injunction was sought. This, however, does not render the matter moot. "It has long been established that where a defendant with notice in an injunction proceeding completes the acts sought to be enjoined the court may by mandatory injunction restore the status quo." *Porter v. Lee*, 328 U.S. 246, 251, 66 S.Ct. 1096, 1099, 90 L.Ed. 1199 (1946). The *Porter* rule has

been applied in a variety of contexts to defeat mootness arguments. *See, e.g., National Forest Preservation Group v. Butz,* 485 F.2d 408, 410–11 (9th Cir.1973) (appeal from denial of injunction against land swap not mooted by virtue of fact that land has been transferred to another party in the litigation); *Padilla v. Ackerman,* 460 F.2d 477, 479 n. 1 (9th Cir.1972) (appeal from denial of injunction against transfer of state prisoners out of a drug treatment program not moot even though transfer has occurred, because district court had power to restore the status quo by ordering the prisoners returned to the treatment program).

The result which the appellant sought in the district court, and continues to seek here, is the continuation of his employment with the DEA in Los Angeles. An order reinstating him to his prior position would have precisely that effect, returning matters to the status quo that existed at the time the original claim for injunction was filed.

■ In arguing that this appeal is moot, the government appears to suggest that the court lacks authority to order reinstatement once the government has fired an employee. Such a proposition is contrary to the provisions of Title VII itself. Section 706(g), 42 U.S.C. § 2000e–5(g), expressly provides for injunctive relief, including reinstatement.[1]

Flexibility in fashioning remedies under Title VII is an important keystone of the administration of the Act. The wording of section 706(g), its legislative history, and subsequent Supreme Court pronouncements make this clear. The Court has observed, for example:

... Congress in § 706(g) vested broad equitable discretion in the federal courts to "order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay ...,

or any other equitable relief as the court deems appropriate." The legislative history supporting the 1972 amendments of § 706(g) of Title VII affirms the breadth of this discretion.

*Franks v. Bowman Transportation Co.,* 424 U.S. 747, 763–64, 96 S.Ct. 1251, 1263–64, 47 L.Ed.2d 444 (1976) (citation omitted).

■ The government also suggests that because the precise action sought to be enjoined is no longer a threatened discharge, but an actual discharge, the case is moot because an injunction against transfer is no longer appropriate. Yet, courts of equity have broad discretion in shaping remedies. *See, e.g.,* 27 Am.Jur.2d *Equity* § 103, at 624 (1966)("The power of equity is said to be coextensive with the right to relief; it is as broad as equity and justice require."). *See also Jones v. SEC,* 298 U.S. 1, 17–18, 56 S.Ct. 654, 658–659, 80 L.Ed. 1015 (1936) ("... after a defendant has been notified of the pendency of a suit seeking an injunction against him, even though a temporary injunction be not granted, he acts at his peril and subject to the power of the court to restore the status, wholly irrespective of the merits as they may ultimately be decided"). Once injunctive relief is ordered, courts retain the authority to modify remedies "because of changes in law or facts, or even, in some cases, a change in the attitude of the parties." D. Dobbs, *Handbook on the Law of Remedies* 111 (1973). This flexibility has been generally recognized since the seventeenth century. *See Developments in the Law—Injunctions,* 78 Harv.L.Rev. 994, 1080 (1965). Thus, as we have seen, the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be any effective relief. In this case there can be.

In the cases cited by the government, the action which rendered the lawsuit moot

---

1. Section 706(g) reads in relevant part:

   If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay, ... or any other equitable relief as the court deems appropriate.

was irreversible, and no effective relief was available. They therefore differ materially from this case. *See, e.g., Dan Caputo Co. v. Russian River County Sanitation District,* 749 F.2d 571, 574 (9th Cir. 1984) (action to enjoin performance of contract mooted by virtue of the completion of the contract); *Enrico's, Inc. v. Rice,* 730 F.2d 1250, 1254 (9th Cir.1984) (issue on appeal mooted by virtue of intervening decision by a California state court interpreting California state law); *Canez v. Guerrero,* 707 F.2d 443, 446 (9th Cir.1983) (action as to procedures used in a union election mooted because the election had occurred and the complainants had been victorious); *Matter of Combined Metals Reduction Co.,* 557 F.2d 179, 192 (9th Cir.1977) (action as to the appropriate disposition of property of a bankrupt company mooted because the sale and lease of the property in question had been completed pursuant to a valid order of the district court).

This appeal is not moot because the termination is not irreversible. We therefore turn to the question of whether the appeal has merit.

### IRREPARABLE HARM

■ The questions raised on the merits of the appeal are whether the heightened requirements of a showing of irreparable harm for injunctive relief against the government enunciated in *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), apply here, and, if so, whether *Sampson's* standard has been met in this case.

*Sampson v. Murray* involved a claim for an injunction against the firing of a probationary government employee whose only substantive claim was that her employer had violated procedural Civil Service regulations in effecting her discharge. The Supreme Court held that although the district court had jurisdiction to consider Murray's claim, it should not have granted relief. She had not made a sufficient showing of irreparable harm because she had asserted only that her termination would result in her own loss of earnings and damage to her own reputation. *Id.* at 91–92, 94 S.Ct. at 953–954. In a footnote, the Court left

open the possibility that sufficient irreparable injury to the employee might, in extraordinary circumstances, justify injunctive relief. *Id.* at 92 n. 68, 94 S.Ct. at 953 n. 68. It did not have occasion to discuss harm of any nature other than monetary loss to the employee.

*Sampson* was not a Title VII case. Several factors led the majority to the result which it reached. One factor is common to all employee suits against the government, including Title VII actions. That is the concern with the disruptive effect of injunctive relief upon government operations. *Id.* at 83, 94 S.Ct. at 949. On the other hand, other considerations which led to the *Sampson* decision apply with little or no force in Title VII cases. For example, "the judicial unwillingness of courts of equity to enforce contracts for personal service ...," *id.,* would not appear to apply to Title VII cases for which Congress has specifically provided the remedy of reinstatement. *See, e.g.,* B. Schlei & P. Grossman, *supra,* at 1063 (a number of the *Sampson* factors are arguably not present in the ordinary private Title VII case).

In Title VII Congress has clearly lessened the latitude traditionally granted the government in conducting its internal affairs. Congress, in applying the anti-employment discrimination provisions of Title VII to the government, section 717, 42 U.S.C. § 2000e–16, expressed an intent to make all remedies that are available to employees of private employers available also to employees of the government. The House Report explained:

> The Federal service is an area where equal employment opportunity is of paramount significance. Americans rely upon the maxim, "government of the people," and traditionally measure the quality of their democracy by the opportunity they have to participate in governmental processes. It is therefore imperative that equal opportunity be the touchstone of the Federal system.

>    ·     ·     ·     ·     ·

> Accordingly there can exist no justification for anything but a vigorous effort to

accord Federal employees the same rights and impartial treatment which the law seeks to afford employees in the private sector.

H.Rep. No. 238, 92d Cong., 2d Sess. 22–23 (1972), *reprinted in* 1972 U.S. Code Cong. & Ad. News 2137, 2157–58. *See also Chandler v. Roudebush,* 425 U.S. 840, 848, 96 S.Ct. 1949, 1954, 48 L.Ed.2d 416 (1976) ("The legislative history of the 1972 amendments reinforces the plain meaning of the statute and confirms that Congress intended to accord federal employees the same right to a trial *de novo* as is enjoyed by private-sector employees and employees of state governments and political subdivisions under the amended Civil Rights Act of 1964."); *Ayon v. Sampson,* 547 F.2d 446, 449 (9th Cir.1976) ("Congress, in enacting 42 U.S.C. § 2000e–16 and thereby extending the equal employment opportunity provisions of the Civil Rights Act to federal employees, intended to include the protections from harassment and retaliation embodied in the Civil Rights Act.").

Not surprisingly, the decision in *Sampson* created some uncertainty as to the application of its principles to Title VII litigation. *See* B. Schlei & P. Grossman, *supra* at 1063. The Fifth Circuit had earlier indicated that a showing of irreparable harm was not a prerequisite to preliminary injunctive relief under Title VII and could be presumed. *United States v. Hayes International Corp.,* 415 F.2d 1038, 1045 (5th Cir.1969). It has now concluded, however, that *Sampson* changed the rule "at least insofar as federal employees are concerned." *Porter v. Adams,* 639 F.2d 273, 278 n. 8 (5th Cir.1981). The Second Circuit has also indicated that the *Sampson* standards apply in Title VII cases. *Stewart v. INS,* 762 F.2d 193, 199 (2d Cir.1985).

In our decision in *EEOC v. Pacific Press Publishing Association,* 535 F.2d 1182 (9th Cir.1976), we stated that the EEOC is not required to show irreparable harm in order to obtain an injunction against a private employer. *Id.* at 1187.[2] We commented, however, that under *Sampson* a private

litigant does have some burden of showing irreparable harm. *Id.* We quoted *Sampson* with approval for the proposition that " 'temporary loss of income, ultimately to be recovered does not usually constitute irreparable injury.' " *Id.* at 1187, *quoting Sampson v. Murray,* 415 U.S. at 90, 94 S.Ct. at 952.

One principle which seems to emerge with some degree of clarity from this history is that if the standards of *Sampson* apply in a Title VII case against the government, then a plaintiff able to show only economic loss as the result of discharge would rarely prevail in a claim for injunctive relief to retain employment. Applying *Sampson* to a case involving only such economic loss, we would uphold a district court's denial of equitable relief.

This case, however, involves more than a claim of harm to the plaintiff and his family as the result of the termination. The claimed violation of the law in this case is retaliatory action for the exercise of Title VII rights, action which, if plaintiff is correct, will have a deleterious effect on the exercise of these rights by others.

That the chilling effect of retaliatory activity can constitute irreparable harm has been recognized by the Second Circuit. In *Holt v. Continental Group, Inc.,* 708 F.2d at 91, it stated:

A retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights under the Act or from providing testimony for the plaintiff in her effort to protect her own rights. These risks may be found to constitute irreparable injury.

As a leading treatise has commented, "the courts will more readily grant [injunctive] relief where allegations of retaliation are involved, because such conduct is likely to cause irreparable harm to the public interest in enforcing the law by deterring others from filing charges." B. Schlei & P. Grossman, *supra,* at 1063. The harm is a

---

**2.** *But see EEOC v. Anchor Hocking Corp.,* 666 F.2d 1037 (6th Cir.1981) (holding that the EEOC does have a burden to show irreparable harm and disagreeing with *Pacific Press*).

continuing one so long as the retaliation remains in effect.

Assuming without deciding that *Sampson*'s standards apply in Title VII cases against the government, we find in this case that there has been a showing of possible serious irreparable harm beyond economic loss. The district court did not consider this showing when it decided that although the plaintiff would likely succeed on the merits, he was not entitled to equitable relief. The plaintiff in this case may well meet *Sampson*'s standards. We therefore remand to the district court for consideration of appropriate relief in light of this opinion.