EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

v.

LIBERTY MUTUAL INSURANCE
COMPANY.

Civ. A. No. 16590.

United States District Court,
N. D. Georgia,
Atlanta Division.

July 12, 1972.

John deJ. Pemberton, Jr., Acting
Gen., Counsel, Washington, D. C., Jo-

seph Ray Terry, Jr., and Edward L. Baety, Atlanta, Ga., for EEOC.

Melburne D. McLendon (Carter, Ansley, Smith, McLendon & Quillian), Atlanta, Ga., Kalvin M. Grove, and S. Richard Pincus (Lederer, Fox & Grove), Chicago, Ill., Robert A. Penney, Boston, Mass., for defendant.

## ORDER

FREEMAN, District Judge.

This action came on for hearing on plaintiff's motion for a preliminary injunction on May 30 and 31, 1972. At the close of the hearing the court orally entered a preliminary injunction. This order making findings of fact and conclusions of law is issued in connection therewith.

## FINDINGS OF FACT

1. This action was brought by the Equal Employment Opportunity Commission pursuant to § 706(f) (2), Title VII, Civil Rights Act of 1964, 42 U.S.C. § 2000e–5, as amended by Public Law 92–261, 86 Stat. 103 (March 24, 1972).

2. Plaintiff is an agency of the United States Government, charged with responsibility, *inter alia*, for receiving and investigating charges of discrimination in employment filed by or on behalf of aggrieved persons; for attempting to eliminate any such discrimination by informal methods of persuasion, and, in appropriate cases, for bringing suit to end such discriminatory employment practices.

3. The defendant is a corporation doing business in the State of Georgia and in the City of Atlanta.

4. Sandra Jane Drew was hired on September 13, 1971, as a Claims Representative in the Claims Department of the defendant's Atlanta City Office. The uniform appraisal of Drew's job performance by management, her supervisors and co-workers is that she was an above average employee.

5. The Claims Department of the Atlanta City Office consists of technical and clerical employees. The technical employees are divided into two groups, Claims Representatives and Claims Adjusters. The Claims Representatives are all female; indeed, all of the 75 Claims Representatives in the nine state Southern Division are female. The Claims Adjusters classification is a predominantly male classification; until 1971 no female had ever been hired or promoted into the Claims Adjuster classification. The starting salary for Claims Representatives is $5300 annually while Adjusters begin at $7500 a year.

6. On August 26, 1970, a "technical claims person" was appointed to be in charge of handling all automobile total loss claims, and a male Adjuster was selected to fill the position. Prior thereto the total loss responsibility had been distributed among the Claims Representatives. The position was held continuously by a male Adjuster until February 7, 1972, when Sandra Drew assumed the position.

7. On February 1, 1972, Drew was called into the office of Mr. Wilsie Hutts, Manager of the Claims Department and told that she had been selected to fill the position at the total loss desk. Drew was advised at this time by Mr. Hutts that she would not receive the same salary, fringe benefits nor all the responsibilities that had been associated with the job when held by an Adjuster.

8. On April 6, 1972, Drew filed a charge of discrimination with the Equal Employment Opportunity Commission, charging defendant with sex discrimination in employment.

9. On the following day, April 7 1972, Mr. Joseph S. Raine, Jr., Assistant Claims Manager, took Drew to see Mr. Orland Krug, Division Claims Manager, who told her that he had learned that she disagreed with company policy. Krug would not accept Drew's offer to discuss their differences. He told her that she had the option of either terminating her employment voluntarily or of being discharged. She chose the latter and was immediately discharged. The

reason given by Krug at the May 30–31, 1972 hearing in this case was that she had disagreed with company policy by insisting on being paid the same salary as her predecessors and because of her "poor attitude." Drew was given no notices, warnings or indication prior to her meeting with Krug that her conduct was unacceptable.

10. Drew was the first employee ever discharged in the Southern Division for opposing company policy. The only other instance in which an employee was discharged without notice occurred some 10 years earlier when an employee was found to have misappropriated company funds.

11. Drew is the sole breadwinner for her family, as her husband is a full-time student.

12. Cheryl Goldberg was hired in August, 1971, as a Claims Representative in the Claims Department of the defendant's Atlanta City Office.

13. Prior to May 5, 1972, agents of defendant reviewed the work performance of Cheryl Goldberg and found it to be deficient.

14. On May 5, 1972, Cheryl Goldberg was discharged by defendant. On May 22, 1972, she commenced work at another job.

15. The defendant has no standards, written or otherwise, with respect to its discharge and disciplinary policies. Employees are given no indication as to which offenses may result in immediate discharge, nor are they told how many warnings or notices may be given in different situations.

16. On May 16, 1972, a meeting was held by defendant at which Raine advised the Claims Representatives that they need not fear retaliation for cooperating with the EEOC. An EEOC investigator, present at the meeting, told Mr. Raine that he was satisfied with the assurances given.

## CONCLUSIONS OF LAW

1. The court has jurisdiction of this action pursuant to § 706(f) (3) of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972.

2. Defendant Liberty Mutual Insurance Company is an employer engaged in an industry affecting commerce within the meaning of § 701(b) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), as amended.

3. There is not a likelihood that Cheryl Goldberg will prevail on the merits of her charge that she was terminated from employment by defendant because she had opposed the discharge of Sandra Drew or because she had assisted the EEOC in its investigation of Sandra Drew's charge of sex discrimination.

4. There is a likelihood that Sandra Drew will prevail on the merits of her charge that she was terminated from her employment by defendant because of opposition to unlawful employment practices and/or because she filed a charge with the EEOC in which she alleged that defendant practiced sex discrimination in its employment practices.

5. Until reinstated to the job which she held prior to termination, Sandra Drew was suffering, and would have continued to suffer, irreparable harm.

6. The reinstatement of Sandra Drew to her former position pending the EEOC's disposition of her charge of discrimination will not substantially harm defendant.

7. The action of the defendant in making known to its employees that they may cooperate with the EEOC in its investigation of the charges filed by Sandra Drew and Cheryl Goldberg and in the investigation of any other charge without fear of loss of employment or benefits obviates the need for any injunction regarding this aspect of the action.

Accordingly, defendant is hereby ordered to reinstate Sandra Drew to her former position at the Total Loss Desk, with all the responsibilities and duties which were formerly assigned to that position. It is further ordered that de-

fendant convey to Sandra Drew the pay which she would otherwise have received from the date of discharge, April 7, 1972, until her reinstatement on June 1, 1972. All back pay shall be at six per cent interest.

In accordance with 42 U.S.C. § 2000e–5(k), the costs, not including attorney's fees, of the Equal Employment Opportunity Commission, the prevailing party, shall be taxed against defendant.

■ On May 23, 1972, the court entered an order regarding discovery. Defendant was ordered to produce within three days documents and information required to be produced until June 9, 1972. On June 9, 1972, on motion of the which was not readily accessible was not non-current employees of defendant and which were readily accessible to its Atlanta office. Information relating to defendant, the court entered an order staying the portions of the May 23 order which had not already been complied with, pending responsive brief from the plaintiff. The EEOC urges the court to continue in effect the entirety of the order of May 23.

The information now sought by the EEOC relates to former employees of the defendant, dating back to July 2, 1965. The EEOC seeks such personnel records in order to make an analysis of the employer's practices, comparing treatment of Drew and Goldberg with treatment of other employees, especially regarding termination. Further, the EEOC seeks such records for the purpose of proving the underlying charge of sex discrimination.

In the present action brought under § 706(f) (2) of Title VII, as amended, the preliminary relief which has been granted by the court is, in effect, the final relief the court can order. While the court will of course retain jurisdiction of the matter in order to insure compliance with its injunction, the court cannot, under the statutory scheme set up by Title VII, proceed to entertain a request for permanent relief or for a ruling on the merits of the charge of discriminatory employment practices. The effect of the court's action in this case is simply to avoid irreparable harm to complainant Drew pending final disposition of her charge by the EEOC.

Defendant thus argues that any further discovery is not warranted and is not relevant to the instant action, as the EEOC has already obtained the preliminary relief sought. The court is in agreement. While the EEOC may very well be entitled to all the information sought, it should proceed administratively according to § 710 of Title VII, as amended (42 U.S.C. § 2000e–9). Although, as the brief from the EEOC points out, such a ruling may require the EEOC to return to court for an order enforcing discovery, it is to be hoped that the dispute regarding discovery can be resolved through the administrative process without the need for any court action on the matter.

The court holds that the further discovery relating to non-current employees of defendant is irrelevant to the present action. Accordingly, the defendant's motion to reconsider is hereby granted and defendant is relieved from the requirement of compliance with paragraphs one and two of the court's order of May 23, 1972, insofar as those paragraphs require discovery regarding non-current employees.

In sum, the court has today granted plaintiff's motion for a preliminary injunction; ordered defendant to reinstate Sandra Drew to her former position, with back pay; taxed costs of the plaintiff, excluding attorney's fees, against the defendant; granted defendant's motion for reconsideration of the court's order of May 23, 1972; and relieved defendant from the requirement of compliance with portions of the order of May 23.

It is so ordered.