535 F.2d 1182
 12 Fair Empl.Prac.Cas. 1312,
11 Empl. Prac. Dec. P 10,947
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellee,
and
Merikay Silver and Lorna Tobler, Intervenors-Plaintiffs-Appellees,
v.
PACIFIC PRESS PUBLISHING ASSOCIATION and General Conference
of Seventh-Day Adventists, Defendants-Appellants.
 No. 75-1792.
 United States Court of Appeals,
Ninth Circuit.
 May 12, 1976.
Rehearing and Rehearing En Banc Denied July 2, 1976.
 
 Mary-Helen Mautner (argued), EEOC, Washington, D. C., for plaintiff-appellee.
 William C. McNeill, III (argued), San Francisco Lawyer's Committee for Urban Affairs, San Francisco, Cal., for intervenors-plaintiffs-appellees.
 Malcom T. Dungan (argued), Brobeck, Phleger & Harrison, San Francisco, Cal., for defendants-appellants.
 OPINION
 Before WRIGHT and SNEED, Circuit Judges, and TAYLOR,* Senior District Judge.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 Pacific Press Publishing Association (Press) asks us to dissolve a preliminary injunction issued by the district court at the request of the Equal Employment Opportunity Commission (EEOC), which restrained Press from carrying out the threatened discharges of two employees, Merikay Silver and Lorna Tobler, intervenors in this action. The court, pursuant to section 706(f)(2) of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-5(f)(2)) enjoined Press from effecting the discharge in retaliation for the employees' filing charges of employment discrimination with EEOC. Another panel of this court stayed the injunction pending this appeal.
 
 
 2
 Appellant is a Seventh-Day Adventist-affiliated publishing house engaged in the preparation and distribution of religiously oriented material. Intervenor Silver was an editorial assistant in Press' book department and intervenor Tobler was an editorial secretary to the editor of the major monthly periodical published by Press. Press requires its employees to be members in good standing of the Seventh-Day Adventist Church and the intervenors have been and now are in that status.
 
 
 3
 Difficulties first arose when intervenors opposed practices by Press which they claimed to be sexually discriminatory employment practices made unlawful by 42 U.S.C. § 2000e et seq. They first filed a charge with EEOC in November 1972 and have subsequently filed others, the latest in January 1974.
 
 
 4
 In January 1973, after having received a right to sue letter from EEOC, Silver initiated a private civil action against Press alleging sex discrimination in employment and retaliation for the exercise of Title VII rights. That suit, subsequently conditionally certified as a class action (Tobler being a member of the class), is now pending before the district court.
 
 
 5
 In response to the various allegations of the employees that Press was engaging in retaliatory acts because they had exercised their rights under Title VII, EEOC filed this action for preliminary relief. Subsequent to the filing of the action, appellant announced its intention to terminate the intervenors' employment because it believed that the filing of charges and law suits by one church member against another was contrary to church policy.
 
 
 6
 The district court, considering only the threat of discharge, found that irreparable injury would result to EEOC and the public interest if the intervenors' employment were terminated. A preliminary injunction was granted requiring Press to refrain from discharging either employee until the pending civil action was resolved or the individual employees were no longer members in good standing of the church. Implicitly noting potential First Amendment problems created by an injunction against a church-affiliated organization the court specifically exempted from its order any requirement that Press assign the employees editorial duties.
 
 
 7
 The lengthy briefs of all parties concerned focus on this constitutional issue. Nowhere do we find any discussion or analysis of the statutory authority under which the injunction issued. 42 U.S.C. § 2000e-5(f)(2). This is particularly noteworthy because we find the outcome of this appeal turns on the statute. In their haste to confront constitutional issues of the first order, the parties have overlooked the basics which we are bound to observe. This results in additional and unnecessary time consumed in the decision-making process which is contrary to the best interests of all concerned. See Nguyen Da Yen v. Kissinger, 528 F.2d 1194, at 1200 n. 8 (9th Cir. 1975).
 
 
 8
 EEOC proceeded under 42 U.S.C. § 2000e-5(f)(2), the scope of which is not unlimited. There are conditions both precedent and subsequent to its application:
 
 
 9
 (2) Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with rule 65 of the Federal Rules of Civil Procedure. It shall be the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited.
 
 
 10
 In the context of this appeal, the statutory language "pending final disposition of such charge" is crucial. Unless it encompasses the period required for the resolution of private suits which result from a charge filed with the EEOC, we conclude that the district court erred in issuing the injunction.
 
 
 11
 Section 2000e-5(f)(2) was enacted in 1972 as an amendment to Title VII of the Civil Rights Act of 1964. (P.L. 92-261, § 4, Mar. 24, 1972, 86 Stat. 104.) Its legislative history makes clear that the "final disposition" language refers to the EEOC's administrative disposition and not to the outcome of any private suits which might result from the charge. In its section-by-section analysis the House Report stated:
 
 
 12
 When after the filling (sic) of a charge, the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to preserve the power of the Commission to grant effective relief, it may bring an action for appropriate temporary or preliminary relief . . . .
 
 
 13
 H.R. Rep. 92-238, 92d Cong., 2d Sess. (1972), 1972 U.S.Code Cong. & Admin.News, p. 2163.
 
 
 14
 This understanding of "final disposition" comports with the statutory plan established by the Equal Employment Opportunity Act, 42 U.S.C. § 2000e et seq.
 
 
 15
 . . . Congress has established . . . an elaborate administrative agency and has devolved upon it the duty, authority, and preliminary (at least) authority to investigate, deal with, and attempt to conciliate employer-employee disputes arising thereunder. The express policy is that for a preordained length of time that agency have the opportunity to bring its expertise to bear on the controversy. . . . The judicial process is not to be appealed to until the time is exhausted . . . unless accelerated earlier via a right to sue letter or a dismissal of the charge.
 
 
 16
 A discharge during the interim period is an obvious interference with the administrative conciliation process . . . .
 
 
 17
 Hyland v. Kenner Prod. Co., 9 E.P.D. P 10,108 at 7515 (S.D.Ohio 1974).
 
 
 18
 The relief envisaged by section 2000e-5(f)(2) is in aid of the EEOC's administrative process. The court's authority to grant such relief terminates with the conclusion of the administrative phase. Hyland v. Kenner Prod. Co., supra. Cf. Berg v. Richmond Unified Sch. Dist., 528 F.2d 1208 (9th Cir. 1975); EEOC v. Liberty Mutual Insurance Co., 346 F.Supp. 675, 677-78 (N.D.Ga.1972), aff'd in 475 F.2d 579 (5th Cir. 1973); Drew v. Liberty Mutual Insur. Co., 480 F.2d 69, 73 (5th Cir. 1973); Troy v. Shell Oil Co., 378 F.Supp. 1042, 1047 (E.D.Mich.1974).
 
 
 19
 The original charge filed by the intervenors had long since gone beyond the EEOC administrative phase when this action was commenced. The initiation of a private action in January 1973 based on the charge signalled the failure of efforts at conciliation and terminated EEOC's opportunity to bring suit under 42 U.S.C. § 2000e-5(f)(1). See Tuft v. McDonnell-Douglas Corp., 517 F.2d 1301, 1309 (8th Cir. 1975). The parties no longer looked to EEOC for relief but instead shifted their attention to the court. At this stage in the proceedings, with the administrative phase concluded, no purpose could be served by employing § 2000e-5(f)(2) to preserve the status quo. The employees were free to seek whatever relief they deemed appropriate in their private action and the discharge sought to be enjoined was properly the subject matter of that suit. The district court was without authority to issue an injunction under § 2000e-5(f)(2) once the private action based on the November 1972 charge had been initiated because that charge was no longer "pending final disposition" by EEOC.
 
 
 20
 Additional charges were also filed with EEOC by the intervenors. They relate to the original charge by the intervenors against Press and to the private action which resulted. In their motion to intervene here, Silver and Tobler assert that this case "involves and grew out of" the private action. Moreover, the "same permanent relief" is sought in the private action as is sought here. Finally, they claim that the disposition of this suit may seriously affect their rights in the private action. (C.T. 169).
 
 
 21
 Evidently, these charges have resulted in neither conciliation nor dismissal. And while a right to sue letter would have clearly been authorized prior to the time EEOC initiated this action, apparently none has issued (42 U.S.C. § 2000e-5(f)(1)).
 
 
 22
 Unlike the first charge, these charges may theoretically still be subject to the administrative process. But their close relationship with the first charge, now the subject of a private action, makes injunctive relief pursuant to § 2000e-5(f)(2) inappropriate. A favorable resolution of the private suit will provide plaintiffs/intervenors with the same relief sought here. To the extent the complaint in the private action does not include allegations contained in the subsequent charges, it may be amended. Plaintiffs/intervenors need not confine their complaint to the particular allegations of the charge filed with the EEOC.
 
 
 23
 When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including acts occurring during the pendency of the charge before the EEOC.
 
 
 24
 Oubichon v. North American Rockwell Corp., 482 F.2d 569, 571 (9th Cir. 1973).
 
 
 25
 Where subsequent charges filed with the EEOC relate to the earlier charge involving the same parties, and where the earlier charges has resulted in a private action under 42 U.S.C. § 2000e-5(f)(1) which may resolve the substance of all the charges, the temporary relief provided for under § 2000e-5(f)(2) is no longer applicable. That section preserves the status quo pending the termination of the administrative proceedings, a process which has proved futile in resolving the earlier, related charge. At this stage of the proceedings, no useful purpose would be served by invoking § 2000e-5(f)(2).
 
 
 26
 Moreover, the language of the statute contemplates the need in certain situations for speedy relief. The EEOC is authorized to seek only "temporary or preliminary relief" when it concludes on the basis of a "preliminary investigation" that "prompt judicial action is necessary. . . ."
 
 
 27
 Here, some of the charges were almost two years old and the most recent was filed more than eight months before EEOC sought injunctive relief. In this context, the need for "prompt judicial action" is belied by the delay in seeking it.
 
 
 28
 The delay in seeking relief under § 2000e-5(f)(2), the lengthy period which the charges have been subject to the administrative process, and the on-going private action in a related charge support our decision. If these factors do not foreclose relief pursuant to § 2000e-5(f)(2) it can theoretically be employed indefinitely. There is apparently no mandatory conclusion to the administrative process prior to the initiation by the parties or by the EEOC of an action under § 2000e-5(f)(1). The termination of administrative proceedings is, therefore, in the control of EEOC and the charging party. It may then become a weapon to be used against those who are the objects of the charges.
 
 
 29
 A holding which would allow preliminary relief under § 2000e-5(f)(2) at any time during this indefinite period cannot be reconciled with the relative ease with which it is procured. Unlike the more traditional route to preliminary injunctive relief, the usual requirement of irreparable injury is relaxed because of the statutory authority granted to EEOC to seek judicial relief against Title VII violations. Cf. Berg v. Richmond Unified Sch. Dist., supra, at 1212 n. 6; Murry v. American Standard, 488 F.2d 529 (5th Cir. 1973). Furthermore, while the injunction runs to the direct benefit of the charging parties, the district court here looked to the injury to EEOC and the public interest and not to the charging parties. This type of inquiry in effect mandates the grant of a preliminary injunctive whenever the EEOC seeks it under § 2000e-5(f)(2) so long as its procedural requirements are met.
 
 
 30
 This is in sharp contrast with the burden the charging parties must assume if they seek preliminary injunctive relief in their private action. There they must show irreparable harm to them if the injunction did not issue. The Supreme Court has said:
 
 
 31
 (I)t seems clear that the temporary loss of income, ultimately to be recovered does not usually constitute irreparable injury.
 
 
 32
 Sampson v. Murray, 415 U.S. 61, 90, 94 S.Ct. 937, 952, 39 L.Ed.2d 166, 186 (1974). Although the Court stated that a case may arise where irreparable injury would result from the discharge of an employee, such cases are "extraordinary." Id. at 92 n. 68, 94 S.Ct. at 953, 39 L.Ed.2d at 187.
 
 
 33
 Preliminary injunctive relief under 42 U.S.C. § 2000e-5(f)(2) is an important tool in protecting Title VII rights, especially in cases involving retaliation for the exercise of those rights. It is not properly employed, however, as a long-term alternative to action under § 2000-5(f)(1) by the charging parties or the EEOC. It provides a means for preserving the status quo pending the determination of administrative proceedings. When that point is reached, or when administrative proceedings have proved futile, § 2000e-5(f)(2) is no longer an appropriate basis for relief.
 
 
 34
 The order of the district court is reversed and the cause remanded.
 
 SNEED, Circuit Judge (dissenting):
 
 35
 I believe the issue before us is more complicated than the majority make it appear. This is said even though I find the result they reach appealing. Moreover, I agree that section 706(f)(2) is not available to the Commission if the administrative phase has terminated. My difficulty is that, on the basis of the record before us and the applicable law and regulations, I am unable to determine whether, as the majority puts it, the "administrative phase" was concluded at the time the EEOC instituted this suit. The "administrative phase" may have been merely "suspended," not concluded. I do not think mere suspension forecloses access by the EEOC to the powers given it by section 706(f)(2) of Title VII, 42 U.S.C. § 2000e-5(f)(2). Because of my uncertainty about whether the administrative process is terminated or merely suspended, I would reverse and remand for further proceedings consistent with the principles hereinafter stated.
 
 I.
 
 36
 The Effect of the 1972 Amendments.
 
 
 37
 To understand my position it is necessary to recall that the 1972 amendments to Title VII clothed the Commission with the power to bring a civil action against one charged under Title VII with an unlawful employment practice. This significantly altered the relationship between the employee asserting an unlawful employment practice, the Commission, and the charged employer. The Commission no longer was limited to investigation and conciliation efforts with recourse to the courts being the responsibility of aggrieved employees. The Commission under the 1972 amendments was empowered to bring a civil action against a private employer if it had been unable to reach an acceptable conciliation agreement with such employer. However, arming the Commission with this power was not done at the expense of aggrieved employees. They continued to be entitled to pursue their Title VII relief. The problem under the 1972 amendments is to discern how Congress intended to accommodate the power of the Commission to file suit to other features of Title VII.
 
 II.
 
 38
 What Constitutes "Termination" and "Suspension" of the
 
 
 39
 Administrative Phase?
 
 
 40
 So far as it concerns the issue of when the administrative phase is concluded, it is clear that the "administrative phase" is brought to an end by dismissal of a charge,[1] by obtaining an acceptable conciliation agreement or other form of voluntary compliance by the employer, or by the Commission determining that voluntary compliance is not possible and initiating a civil suit against the employer. It is also clear that a determination by the Commission not to bring a civil suit, although reasonable cause to believe the charge is true exists, together with the issuance of a Right-To-Sue letter, will end the administrative phase. See Tuft v. McDonnell-Douglas Corporation, supra at 1309.
 
 
 41
 On the other hand, it is reasonably clear that the mere issuance of a Notice of Right-To-Sue letter does not conclude the "administrative phase." The relevant portions of the statute authorizing such notices provides:
 
 
 42
 "if within one hundred and eighty days from the filing of such charge, the Commission has not filed a civil action under this section or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved." 42 U.S.C. § 2000e-5(f)(1).
 
 
 43
 This language plainly suggests that the mere issuance of a Right-To-Sue letter does not terminate the power of the Commission to continue its conciliation efforts. The House Report states explicitly that the 180-day time period was intended as an escape mechanism for the aggrieved employee in those situations where the administrative machinery bogs down. H.REP. NO. 238, 92d Cong., 2d Sess. 12-13 (1972).[2]
 
 
 44
 More difficult, of course, is the question of whether the filing of the suit by the aggrieved person following the issuance of a Right-To-Sue letter terminates the administrative phase. The majority believe it does and the House version of the 1972 amendments so provided.[3] No such provision appears in the law at present. Nor do the current regulations provide for termination of Commission jurisdiction. Their approach is to permit the aggrieved person to demand a Right-To-Sue letter at the expiration of one hundred and eighty days from the date of filing the charge. 29 C.F.R. § 1601.25b(c). The Commission must comply with the demand, but it is not required to issue such a letter in the absence of a demand. Regulation 1601.25b(d) then provides:
 
 
 45
 "Issuance of notice pursuant to paragraph (c) of this section shall suspend further Commission proceedings unless the Field Director determines that it is in the public interest to continue such proceedings, or unless, within twenty (20) days after receipt of such notice, a party requests the Field Director, in writing, to continue to process the case."
 
 
 46
 Nothing appears in the regulations to transmute "suspension" of Commission proceedings to "termination" upon the filing of a suit by the recipient of the Right-To-Sue letter. Suspension continues indefinitely unless and until, it is lifted, or proceedings are terminated in another fashion.
 
 III.
 
 47
 Does "Suspension" of Administrative Phase Foreclose Access
 
 
 48
 to Section 706(f)(2)?
 
 
 49
 These regulations are not an unreasonable interpretation of a statute made somewhat ambiguous by the process of legislative compromise. Treating them as valid interpretive regulations requires that the issue whether suspension of Commission proceedings forecloses Commission access to section 706(f)(2) be confronted. I do not believe such access is foreclosed. Circumstances may arise in which it will be necessary to invoke the aid of the court to maintain the existence of the opportunity to lift the suspension of Commission proceedings. Retaliatory discharges could destroy this opportunity and access to section 706(f)(2) should be available to prevent it. However, access to section 706(f)(2) must be for the purpose of preserving the opportunity of reviving Commission proceedings.[4] That is, it must serve the "purposes of this Act" by protecting the Commission's administrative process as it relates to the aggrieved party to whom the Right-To-Sue letter was given.[5]
 
 IV.
 
 50
 Showing Necessary To Obtain Section 706(f)(2) Relief Where
 
 
 51
 Administrative Phase Suspended.
 
 
 52
 It follows that the Commission, to obtain injunctive relief under section 706(f)(2) subsequent to the issuance of a Right-To-Sue letter, must make a showing sufficient to convince the trial court that it should exercise its equitable powers to preserve the suspended state of the Commission's administrative process. Such a showing, inter alia, requires that the Commission indicate that it has not determined whether to bring civil suit against any respondent named in the charge. A determination not to sue joined with the issuance of a Right-To-Sue letter to the aggrieved party, as already indicated, terminates the administrative phase, while an unimplemented decision to sue may make section 706(f)(2) relief unnecessary. Suspension of the decision whether to sue in its own right, however, is compatible with such relief. Moreover, the Commission must, when properly challenged, demonstrate that laches does not bar it from exercising its section 706(f)(2) rights. An administrative process suspended for years, for example, may indicate that the Commission is barred. In brief, the Commission must show that the administrative phase is not terminated and that it is otherwise entitled to section 706(f)(2) relief under the provisions of Rule 65, Fed.R.Civ.P.
 
 V.
 
 53
 Disposition Under These Principles.
 
 
 54
 Applying these principles to the Commission's allegations in this case and the District Director's affidavit of September 3, 1974, I conclude that there is no adequate showing that the administrative phase has not been terminated with respect to Merikay Silver, an aggrieved party to whom a Right-To-Sue letter has been given. Lorna Tobler apparently has not been given such a letter. This may strengthen the Commission's contention that the administrative phase with respect to her complaints is not ended. However, both Silver and Tobler have been treated alike in this proceeding to date. As a consequence, the record does not provide a sufficient basis upon which to rest an informed distinction between the two. Hence, I would remand this case to the district court to permit it to determine whether the administrative phase has been concluded with respect to either or both.
 
 
 55
 Should the district court determine that the administrative phase has not been completed as to either Silver or Tobler, it is entitled to consider a retaliatory discharge of the aggrieved party, or parties, as satisfying the "irreparable injury" requirement of Rule 65. See Murry v. American Standard, Inc., 488 F.2d 529 (5th Cir. 1973); Hyland v. Kenner Products, 9 E.P.D. P 10,108 (S.D.Ohio 1974). However, to permit the Commission to invoke this reduction of the "irreparable injury" standard following the termination of the administrative phase not only exceeds the reach of section 706(f)(2) but also improperly would permit the aggrieved party to avoid the conventional "irreparable injury" burden which he must shoulder to obtain a preliminary injunction under such circumstances. Hyland v. Kenner Products, supra; cf. Sampson v. Murray, 415 U.S. 61, 83-84, 94 S.Ct. 937, 949-950, 39 L.Ed.2d 166, 183 (1973).
 
 
 56
 I would reverse and remand for further proceedings.
 
 
 
 *
 Honorable Fred M. Taylor, Senior United States District Judge, District of Idaho, sitting by designation
 
 
 [1]
 See DeMatteis v. Eastman Kodak Co., 511 F.2d 306 (2d Cir. 1975); Tuft v. McDonnell-Douglas Corporation, 517 F.2d 1301 (9th Cir. 1975); 29 C.F.R. § 1601.19b, as amended, July 16, 1974
 
 
 [2]
 The House version differed from the bill which was enacted. See note 3 infra. The difference, however, was that the House version explicitly ended Commission jurisdiction at the time of filing of a civil suit. The fact that this provision was dropped in the final version lends additional support to the proposition that the 180-day time period is not a limit on Commission jurisdiction
 
 
 [3]
 The pertinent section of the House version reads:
 "CIVIL ACTIONS BY PERSONS AGGRIEVED
 "Sec. 715. (a) If (1) the Commission determines that there is no reasonable cause to believe the charge is true and dismisses the charge in accordance with section 706(b), (2) finds no probable jurisdiction and dismisses the charge, or (3) within one hundred and eighty days after a charge is filed with the Commission, or within one hundred and eighty days after expiration of any period of reference under section 706(c) or (d), the Commission has not either (i) issued a complaint in accordance with section 706(f), (ii) determined that there is not reasonable cause to believe the charge is true and dismissed the charge in accordance with section 706(b) or found no probable jurisdiction and dismissed the charge, or (iii) entered into a conciliation agreement acceptable to the Commission and to the person aggrieved in accordance with section 706(f) or an agreement with the parties in accordance with section 706(i), the Commission shall so notify the person aggrieved and within sixty days after the giving of such notice a civil action may be brought against the respondent named in the charge (1) by the person claiming to be aggrieved, or (2) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission to intervene in such civil action if it certifies that the case is of general public importance. Upon the commencement of such civil action, the Commission shall be divested of jurisdiction over the proceeding and shall take no further action with respect thereto: Provided, That, upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending termination of State or local proceedings described in subsection (c) or (d) or the efforts of the Commission to obtain voluntary compliance." H.R. 1746, 92d Cong., 2d Sess. (1972) (emphasis added).
 
 
 [4]
 Support for this view can be gleaned from a comparison of the House and Senate versions and a reading of the Conference Report. The House bill read:
 "(O) Whenever a charge is filed with the Commission pursuant to subsection (b) and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to preserve the power of the Commission to grant effective relief in the proceeding the Commission may bring an action for appropriate temporary or preliminary relief pending its final disposition of such charge, in the United States district court for any judicial district in the State in which the unlawful employment practice concerned is alleged to have been committed or the judicial district in which the aggrieved person would have been employed but for the alleged unlawful employment practice, but, if the respondent is not found within any such judicial district, such an action may be brought in the judicial district in which the respondent has his principal office. For purposes of sections 1404 and 1406 of title 28, United States Code, the judicial district in which the respondent has his principal office shall in all cases be considered a judicial district in which such an action might have been brought. Upon the bringing of any such action, the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law. Rule 65 of the Federal Rules of Civil Procedure, except paragraph (a)(2) thereof, shall govern proceedings under this subsection."
 H.R. 1746, 92d Cong., 2d Sess. (1972) (emphasis added).
 The Senate bill read:
 "(5) Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision, may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. It shall be the duty of a court having jurisdiction over proceedings under this section to assign cases for hearing at the earliest practicable date and to cause such cases to be in every way expedited."
 S. 2515, 92d Cong., 2d Sess. 4 (1972) (emphasis added).
 The Conference Report states:
 "The Senate amendment authorized the Commission or the Attorney General to seek preliminary injunctive relief. The House bill authorized the Commission to seek preliminary relief and required a showing that substantial and irreparable injury to the aggrieved party would be unavoidable. The Senate receded with an amendment that authorizes the Commission or the Attorney General to seek preliminary injunctive relief and a provision that Rule 65 of the Federal Rules of Civil Procedure should govern all actions brought under this subsection."
 S. REP. NO. 681, 92d Cong., 2d Sess. 18 (1972). The Conference Report indicates that the Conference managers perceived the difference between the versions to be the requirement of a showing of irreparable injury on the part of the aggrieved employee. Thus, it appears that the managers felt that the Senate language, "necessary to carry out the purposes of this Act," was equivalent to the original House language, "necessary to preserve the power of the Commission to grant effective relief in the proceeding." This is the sense in which we view the language.
 
 
 [5]
 If the Commission wishes to seek preliminary relief for other purposes, the Act provides a mechanism for doing so. The Act allows the district court, in its discretion, to allow the Commission to intervene in a private civil action "upon certification that the case is of general public importance." 42 U.S.C. 2000e-5(f)(1). Once the Commission has intervened it could seek any relief it thought appropriate and the lower barrier for irreparable harm would would presumably apply. The action here is, in effect, an attempt to do an end run around the certification of public importance and the discretion of the trial judge