666 F.2d 1037
 27 Fair Empl.Prac.Cas. 809,
27 Empl. Prac. Dec. P 32,291
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant,
and
Earl Murry, Plaintiff-Intervenor-Appellant,
v.
ANCHOR HOCKING CORPORATION, Defendant-Appellee.
 Nos. 80-3456, 80-3457.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 19, 1981.
Decided Dec. 16, 1981.
 
 Bennie E. Espy, Dennis D. Grant and Charles H. Walker, Bricker & Eckler, Columbus, Ohio, for plaintiff-appellant in No. 80-3456.
 Justine Lisser, E. E. O. C.-Appellate Division, Washington, D. C., Lawrence Mays, E. E. O. C. (Cleveland Dist. Office), Cleveland, Ohio, for plaintiff-appellant in No. 80-3457.
 Rudolph Janata, Porter, Wright, Morris & Arthur, Columbus, Ohio, David A. Copus, Seyfarth, Shaw, Fairweather & Geraldson, Lee E. Miller, Washington, D.C., for defendant-appellee.
 Before EDWARDS, Chief Judge, and MERRITT and BROWN, Circuit Judges.
 BAILEY BROWN, Circuit Judge.
 
 
 1
 The principal question presented by this appeal is whether § 706(f)(2) of Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. § 2000e-5(f) (2), which authorizes the Equal Employment Opportunity Commission ("EEOC" or "the Commission") to sue for temporary injunctive relief when a charge has been filed with the Commission and "the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of the Act," permits the issuance of a preliminary injunction without the traditional showing of irreparable injury. The Commission brought this action requesting a preliminary injunction requiring the appellee, Anchor Hocking Corporation, to reinstate the intervenor, Earl Murry, to the position from which he had been discharged, allegedly in retaliation for his participation in proceedings before the EEOC and opposition to practices made unlawful by Title VII. The district court held that § 706(f)(2) required a showing of irreparable harm and that the Commission and Murry had failed to make such a showing. The EEOC and Murry appealed pursuant to 28 U.S.C. § 1292(a)(1). We agree with the district court and therefore affirm.
 
 
 2
 The events leading up to this appeal began on August 10, 1979, when Daisy Flowers, president of the Lancaster, Ohio, chapter of the NAACP, filed a charge with the EEOC on behalf of Anchor Hocking employees. The charge contained broad allegations of racial discrimination against its employees by Anchor Hocking and specified three persons, including Earl Murry, as victims of discrimination.
 
 
 3
 Murry, a black male, had been employed by Anchor Hocking for nearly ten years and was its highest ranking black employee. As "Corporate Director of Employee Affairs," it was his duty to monitor Anchor Hocking's equal employment program, including investigating, reporting on, and recommending resolution of employee complaints, and responding to outside complaints. He was the ombudsman for black employees.
 
 
 4
 After Anchor Hocking received the Flowers charge, its general counsel questioned Murry about his involvement with the charge. Murry denied having authorized his name to appear therein. He was requested to take affirmative steps to disassociate himself from the charge, which he did.
 
 
 5
 On December 4, 1979, Murry was questioned under oath by Anchor Hocking officials before a court reporter about his involvement in the Flowers charge and an earlier charge that had been filed with the EEOC. Immediately afterwards, Murry was suspended with pay for thirty days. He remained on suspension until February 1, 1980, when he was terminated. Anchor Hocking asserts that the reason for Murry's discharge was that he had used confidential and privileged information gathered in the course of his employment to bring charges against Anchor Hocking with the EEOC and the Office of Federal Contract Compliance, and thus he was guilty of conflict of interest. Anchor Hocking also contends that Murry lied under oath when questioned about his involvement in these charges.
 
 
 6
 On February 8, 1980, Murry filed a charge with the EEOC against Anchor Hocking alleging unlawful retaliation. On February 21, 1980, the EEOC filed this action for preliminary relief, alleging that Murry's reinstatement was necessary to an effective investigation of the pending charges, for if he were not reinstated, it was alleged, black employees at Anchor Hocking would be reluctant to cooperate in the investigation. Murry filed a motion to intervene, which the district court granted.
 
 
 7
 At the hearing on the application for a preliminary injunction, the EEOC presented testimony from five Anchor Hocking employees, each of whom testified that, though not yet asked, he would be hesitant to cooperate with the EEOC because of fear of retaliation by Anchor Hocking. On the other hand, Barbara Spotts, an EEOC investigator assigned to the Flowers charge, testified that she had not detected a lack of cooperation from Anchor Hocking employees that she had contacted. The investigation was just beginning when the district court held its hearing.
 
 
 8
 The district court, Duncan, J., denied the motion for a preliminary injunction. The court held that § 706(f)(2) upon which the EEOC relies requires a showing of irreparable injury before preliminary relief may be granted[1] and that neither the EEOC nor Murry had made such a showing. 23 FEPC 81 (April 7, 1980).
 
 
 9
 With regard to Murry, the court relied on Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), for the proposition that a discharge from employment will seldom rise to the level of irreparable harm. The court also noted that the statutory remedies of reinstatement and back pay would be available to Murry if his claim were successful on the merits.
 
 
 10
 With regard to the EEOC, the court found that there had been no showing that Murry's discharge had yet impeded its investigative functions. The court stated that the testimony of the five Anchor Hocking employees that they would be reluctant to cooperate with the investigation was "speculative" and that the Commission needed to show that its investigation was actually being obstructed before preliminary relief would be warranted.
 
 
 11
 On appeal, the Commission and Murry argue that the district court applied an incorrect legal standard in denying the preliminary injunction to the EEOC.[2] They contend that a showing of irreparable harm is not a prerequisite to the EEOC's obtaining a preliminary injunction under § 706(f)(2) and urge this court to remand to the district court for a determination of whether the other requirements for a preliminary injunction are present, i.e., whether there was likelihood of success on the merits, whether the issuance of a preliminary injunction would cause substantial harm to others, and whether the public interest would be served by issuing the preliminary injunction. Mason County Medical Association v. Knebel, 563 F.2d 256, 261 (6th Cir. 1977). The EEOC and Murry contend, alternatively, that the district court was clearly erroneous in finding that they had not shown irreparable injury and urge that it be reversed on that basis.
 
 
 12
 Section 706(f)(2) provides, in relevant part:
 
 
 13
 Whenever a charge is filed with the Commission and the Commission concludes on the basis of a preliminary investigation that prompt judicial action is necessary to carry out the purposes of this Act, the Commission ... may bring an action for appropriate temporary or preliminary relief pending final disposition of such charge. Any temporary restraining order or other order granting preliminary or temporary relief shall be issued in accordance with Rule 65 of the Federal Rules of Civil Procedure.
 
 
 14
 42 U.S.C. § 2000e-5(f)(2) (1976).
 
 
 15
 On its face, the statute does not indicate whether or not a showing of irreparable injury is a prerequisite to the grant of a preliminary injunction. The EEOC contends, however, that § 706(f)(2) contains its own standard for determining when injunctive relief should be granted. The Commission argues that the language empowering it to bring an action for injunctive relief "(w) henever ... the Commission concludes ... that prompt judicial action is necessary to carry out the purposes of the Act" by clear implication places the primary responsibility of determining the necessity of preliminary relief on the Commission. The EEOC therefore asserts that courts must grant relief under § 706(f)(2) whenever the EEOC demonstrates that:[3]
 
 
 16
 (a) a charge of discrimination was filed;
 
 
 17
 (b) after conducting a preliminary investigation, the Commission has concluded that prompt judicial action is necessary to carry out the purposes of the Act; and(c) there is a prima facie case establishing that defendant is likely to have committed serious violations of the Act which will, if not enjoined, frustrate its purposes.
 
 
 18
 We do not believe, however, that the language of § 706(f)(2) on its face can be so construed. The statute does not state that an injunction must be granted whenever the Commission determines that prompt judicial action is necessary. On the other hand, the statute does not require a prima facie showing of a violation of Title VII. It appears to us that the EEOC could just as plausibly argue that the statute does not require a prima facie showing of a violation as it does argue that the statute does not require a showing of irreparable injury, and yet the EEOC concedes that the statute, properly construed, requires a showing of such a violation. By its terms the statute merely authorizes the EEOC, upon making a determination that prompt judicial action is necessary, to bring an action for "appropriate" relief. The decision whether relief is "appropriate" is left to the court.[4]
 
 
 19
 Anchor Hocking likewise asserts that § 706(f)(2) contains a standard for determining whether an injunction should issue. Anchor Hocking reads the reference to Fed.R.Civ.P. 65 as incorporating into the statute the traditional equitable standards for preliminary injunctions. Rule 65 itself, however, contains no substantive standards governing the issuance of preliminary injunctions. Commentators are in agreement that the rule merely sets forth procedural guidelines for seeking and obtaining an injunction and has no bearing on the substantive prerequisites to obtaining equitable relief. 7 Moore's Federal Practice P 65.03 at 65-25 (1980); 11 C. Wright and A. Miller, Federal Practice and Procedure § 2941 at 359 (1972).
 
 
 20
 Accordingly, we do not believe that § 706(f)(2), on its face, can be read as including or excluding an irreparable injury requirement.
 
 
 21
 The legislative history of § 706(f)(2), though sparse, sheds light on this issue. Section 706(f)(2) was part of the 1972 amendments to Title VII; the EEOC was authorized, by these amendments, for the first time to bring enforcement actions. The original Senate bill, S. 2515, provided that the EEOC would have the authority to bring actions for preliminary injunctions and that such actions would be governed by Rule 65. The report which accompanied the bill specifically addressed the issue of irreparable harm, stating that the "(a)ppropriate standard for the courts to apply was aptly stated ... in United States v. Hayes International Corp., (415 F.2d 1038, 1045 (5th Cir. 1969) ):
 
 
 22
 (I)rreparable injury would be presumed from the very fact that the statute has been violated...."
 
 
 23
 S.Rep.No.92-415, 92d Cong., 1st Sess. 21 (1971).
 
 
 24
 As stated, the original Senate bill provided that temporary relief would be governed by Rule 65; but the reference to Rule 65 was stricken before it passed the Senate. 117 Cong.Rec. 39739 (1971).
 
 
 25
 By contrast, the House bill, H.R. 1746, provided:
 
 
 26
 (N)o temporary restraining order or other preliminary or temporary relief shall be issued absent a showing that substantial and irreparable injury will be unavoidable.
 
 
 27
 117 Cong.Rec. 31980 (1971).
 
 
 28
 Thus, while the Senate bill would not have required any showing of irreparable injury, the House bill would have required a stronger showing ("that substantial and irreparable injury will be unavoidable") than traditionally required by equity. The resolution of the two provisions is explained as follows in the Joint Explanatory Statement of Managers at the Conference on H.R. 1746:
 
 
 29
 The Senate amendment authorized the Commission or the Attorney General to seek preliminary injunctive relief. The House bill authorized the Commission to seek preliminary relief and required a showing that substantial and irreparable injury to the aggrieved party would be unavoidable. The Senate receded with an amendment that authorized the Commission or the Attorney General to seek preliminary injunctive relief and a provision that Rule 65 of the Federal Rules of Civil Procedure should govern all actions brought under this subsection.
 
 
 30
 S.Rep.No.92-681, 92d Cong., 2d Sess. 18 (1972), reprinted in (1972) U.S.Code Cong. & Ad.News 2137, 2179, 2182.
 
 
 31
 We construe this legislative history as follows. The Senate, when it initially passed the bill, struck the reference to Rule 65 for the reason that such reference was viewed as inconsistent with the intention that a showing of irreparable injury would not be required. At conference, the House insisted that the requirement of a showing of irreparable injury more stringent than equity had traditionally required be included. The Senate receded as to its position that no showing of irreparable injury would be required, and the House agreed that a showing of irreparable injury to the extent that equity has traditionally required would be sufficient. This was intended to be accomplished by striking the stringent wording of the House bill and reinserting the requirement that temporary relief would be granted in accordance with Rule 65.
 
 
 32
 This interpretation of the statute, as finally enacted, is further supported by the widely accepted rule of statutory construction that statutes are to be interpreted with reference to the general law and, where there is no indication to the contrary, given a meaning that is consistent with such law. United States v. Cox, 593 F.2d 46, 49 (6th Cir. 1979); United States v. Monasterski, 567 F.2d 677, 681-82 (6th Cir. 1977); Tarlton v. Saxbe, 507 F.2d 1116, 1122-23 n. 14 (D.C.Cir.1974). There is nothing in this legislative history that indicates that, as the statute was ultimately enacted, Congress intended to abandon the time-honored requirement of a showing of irreparable injury.
 
 
 33
 None of the cases that deal with this problem that we have examined refer to this legislative history.
 
 
 34
 The district court, in reaching the conclusion that a showing of irreparable injury is required for the issuance of a temporary injunction under § 706(f) (2), relied on EEOC v. Bay Shipbuilding Corp., 480 F.Supp. 925 (E.D.Wis.1979) (EEOC's appeal dismissed on its motion by order entered July 7, 1980 (7th Cir. No. 80-1007)). Bay Shipbuilding is on all fours with the instant case. Also holding that a showing of irreparable injury is required are EEOC v. Lockheed Electronics Co., Inc., 461 F.Supp. 242 (S.D.Tex.1978) and EEOC v. Bronson Methodist Hospital, 489 F.Supp. 1066 (W.D.Mich.1979). On the other hand, EEOC v. Union Bank of Arizona, 12 FEPC 527, 11 Empl.Prac.Dec. P 10, 764 (D.Ariz.1976), held that no such showing is required.
 
 
 35
 The EEOC relies heavily on EEOC v. Pacific Press Publishing Ass'n, 535 F.2d 1182 (9th Cir. 1976), which does contain dictum to the effect that, under § 706(f)(2), no showing of irreparable injury is required. But, as stated, this is clearly dictum since the district court had actually found irreparable injury and the Court of Appeals held that injunctive relief in any event could not be granted since the EEOC's investigation had been completed at the time such relief was sought.
 
 
 36
 The EEOC also relies on United States v. Hayes International Corp., 415 F.2d 1038 (5th Cir. 1969). In this case the court held that the Attorney General, proceeding under § 707(a), of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-6(a), need not show irreparable injury to obtain a temporary injunction. This older provision, of course, does not have the same legislative history and does not have the reference to Rule 65 as does the provision involved in the instant case. Moreover, there is at least some indication that, as result of the later decision of the Supreme Court in Sampson v. Murray, supra, this rule will not always be followed in the Fifth Circuit. See Farshy v. Kagan, 585 F.2d 749 (5th Cir. 1978).
 
 
 37
 Several distinct rationales for doing away with the irreparable injury requirement are apparent in Pacific Press and Hayes, supra. First, there is the notion that a statutory violation is irreparable injury per se. Under such a rule, the EEOC would be entitled to an irrebuttable presumption of irreparable injury in actions brought under § 706(f)(2). We believe, however, that the creation of such an irrebuttable presumption is not justified. A violation of this statute, as a matter of fact, may or may not create irreparable injury to an individual or to the EEOC. Further, one reason the courts have traditionally been reluctant to issue preliminary injunctions is that "judicial intervention before the merits have been finally determined frequently imposes a burden on defendant that ultimately turns out to be unjustified." 11 C. Wright and A. Miller, Federal Practice and Procedure § 2947 at 424 (1972).
 
 
 38
 Second, these cases relied on by the EEOC indicate that the EEOC, in suing for a preliminary injunction under Title VII, acts in the public interest and should not be required to make the same showing that is required of a private plaintiff. However, in Hecht v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944), the Supreme Court construed § 205(a) of the Emergency Price Control Act, which authorized the Administrator of the Act to sue for injunctions. The Court held that ambiguities in § 205(a) would be resolved
 
 
 39
 in favor of that interpretation which affords a full opportunity for equity courts to treat enforcement proceedings under this emergency legislation in accordance with their traditional practice, as conditioned by the necessities of the public interest, which Congress has sought to protect.
 
 
 40
 Id. at 330, 64 S.Ct. at 592 (citations omitted). We read Hecht as indicating that, although the public interest may be an important factor in ruling on a motion for preliminary injunction in this context, the traditional equity requirements are still to be weighed.
 
 
 41
 Finally, there is some indication in Pacific Press, supra, that the EEOC's determination that injunctive relief is necessary is entitled to substantial deference. The Ninth Circuit stated that the court must grant a preliminary injunction whenever the EEOC seeks it, as long as the statute's procedural requirements are met. 535 F.2d at 1187. The problem with this reasoning is that it would amount to giving the EEOC itself the authority to determine whether injunctive relief should be granted. Under § 706(f)(2), the EEOC has the authority to initiate actions; it does not have the authority to grant relief. If Congress had intended such a result, it could have either given the EEOC independent enforcement powers or limited the court's discretion by express language. As a matter of statutory construction, we believe that the fact that Congress required the Commission to bring an action in court to obtain a preliminary injunction and did not include any language limiting the court's discretion to deny the requested relief indicates that it intended for the courts to exercise their traditional discretion in ruling on these actions.
 
 
 42
 The irreparable injury which must be established under § 706(f)(2) may be, as the district court held, to the EEOC or to the charging party. The Commission can obtain relief by showing, e.g., that the charging party will in fact suffer irreparable harm if he is not reinstated. It can also obtain relief by, e.g., showing that in fact its ability to prosecute the pending charge has been impeded by the alleged retaliation through the "chilling" effect on other employees' willingness to cooperate in the investigation.
 
 
 43
 The EEOC and Murry contend that the district court's findings that neither Murry nor the EEOC's investigation would be irreparably harmed if immediate reinstatement were not ordered are clearly erroneous. Fed.R.Civ.P. 52(a). We disagree. Findings of fact are not "clearly erroneous" unless the reviewing court has, on a review of the entire record, "a definite and firm conviction that a mistake has been committed," giving due regard to the trial court's opportunity to judge the credibility of the witnesses. United States v. Oregon State Medical Society, 343 U.S. 326, 339, 72 S.Ct. 690, 698, 96 L.Ed. 978 (1952).
 
 
 44
 With regard to Murry, we agree with the district court that the statutory remedies of reinstatement and back pay will adequately redress his injury if his retaliation claim is successful. With regard to the Commission, we note that there was conflicting evidence in the record as to whether the investigation of the Flowers charge was actually impeded by Murry's discharge. The investigation had just begun when the EEOC brought this action and the district court held its hearing on the application for a temporary injunction. Certainly, the testimony of Barbara Spotts, the EEOC investigator responsible for looking into the Flowers charge, that she had not detected a lack of cooperation with her investigation by Anchor Hocking employees, provides ample evidentiary support for the district court's finding. We therefore cannot say that it is clearly erroneous.
 
 
 45
 Accordingly, the judgment of the district court is AFFIRMED.
 
 
 46
 GEORGE CLIFTON EDWARDS, Jr., Chief Judge, concurring in part and dissenting in part.
 
 
 47
 I concur with my colleagues in Judge Brown's well-reasoned and documented holding that irreparable injury must be shown before EEOC was entitled to a preliminary injunction. I also agree that there is a weight of precedent in favor of the District Judge's holding that appellant Murry had not shown irreparable injury in view of the possibility of ultimate compensation for lost salary.
 
 
 48
 I dissent, however, from the affirmance of the District Judge's denial of EEOC's petition for a preliminary injunction. The abrupt discharge of the highest black employee in the corporation is certain to have a chilling effect on the EEOC's investigation-particularly since he held the title of "Corporate Director of Employee Affairs." I would hold the District Judge's finding to the contrary to be clearly erroneous.
 
 
 
 [1]
 Although, as indicated, Murry filed a separate appeal, he does not contend that he need not show irreparable injury; his contention is, on this branch of the case, that the EEOC, suing pursuant to § 706(f)(2), need not show such injury
 
 
 [2]
 If the district court made an error of law in its determination that a showing of irreparable injury was necessary, this court may and should reverse. 11 C. Wright and A. Miller, Federal Practice and Procedure, § 2962 at 637
 
 
 [3]
 In asserting that these are the only requirements for issuance of a temporary injunction under § 706(f)(2), the EEOC by inference contends that satisfaction of requirement (c) is tantamount to showing, not only likelihood of success, but also that the injunction would do no substantial harm to others and would be in the public interest
 
 
 [4]
 The language of § 706(f)(2) is in contrast with a number of other federal statutes authorizing government agencies to seek injunctive relief, which do appear to limit the district court's discretion as to whether the injunction should issue. See, e.g., 7 U.S.C. § 13a-1; 15 U.S.C. § 78u(d) ("upon a proper showing (of a violation of the statute or a regulation), a permanent or temporary injunction shall be issued" (emphasis added)); 39 U.S.C. § 3007 ("the United States district court ... shall ... upon a showing of probable cause to believe (that 39 U.S.C. § 3005 or § 3006) is being violated, enter a ... preliminary injunction ..." (emphasis added))